SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Donna Rowe v. Bell & Gossett Company (A-16-18) (081602)**

**Argued March 25, 2019 -- Decided September 11, 2019**

**PATTERSON, J., writing for the Court.**

The Court considers whether the trial court properly admitted into evidence statements made by defendants who reached a settlement with plaintiffs prior to trial and whether the court properly allowed the jury to allocate fault to those settling defendants.

Plaintiffs Ronald Rowe and Donna Rowe filed an asbestos product liability action alleging that Ronald Rowe contracted mesothelioma as a result of exposure to asbestos-containing products sold by defendants. The parties conducted discovery. Each defendant served certified answers to interrogatories, and plaintiffs' counsel deposed defendants' current and former employees, who testified as corporate representatives.

One defendant named in plaintiffs' complaint was "Universal," which asserted against all other defendants crossclaims for contribution and for common-law indemnification. ("Universal" is used in the opinion and here to denote both Hilco, Inc., and Universal Engineering Co., Inc., without prejudice to the parties' arguments as to successor liability.) Plaintiffs settled their claims with eight defendants. When the trial commenced, Universal was the only defendant remaining.

Universal moved to admit excerpts from the settling defendants' answers to interrogatories and the deposition testimony of their corporate representatives. Evidently relying on N.J.R.E. 803(b)(1), and noting Universal's crossclaims, the trial court admitted the interrogatory answers as statements by a party to the case. Although the court cited N.J.R.E. 804(b)(1) with respect to only one settling defendant, it deemed the corporate representatives of six out-of-state settling defendants to be unavailable to testify at trial and admitted their deposition testimony. However, the trial court excluded the deposition testimony of the corporate representatives of two defendants, as well as portions of certain answers to interrogatories and deposition testimony proffered by Universal.

In support of Universal's position that the jury should allocate fault to the settling defendants, its counsel read to the jury the admitted excerpts from the settling defendants' interrogatory answers and the deposition testimony of the corporate representatives. The trial court concluded that Universal had submitted sufficient factual proofs to warrant

allocation of fault to the settling defendants and denied plaintiffs' motion to bar such an allocation. The jury returned a verdict in plaintiffs' favor but allocated only twenty percent of the fault to Universal, sharing the remainder of the fault among the eight settling defendants.

Plaintiffs moved for judgment notwithstanding the verdict or for a new trial, arguing in part that Universal had failed to present prima facie evidence sufficient to warrant an allocation of fault to the settling defendants. The trial court denied plaintiffs' motion and entered a molded judgment in plaintiffs' favor.

The Appellate Division reversed and remanded for a new trial on the apportionment of fault. It held that the disputed evidence was inadmissible under N.J.R.E. 803(b)(1) because Universal did not offer that evidence against the settling defendants and under N.J.R.E. 804(b)(1) because the declarants were not "unavailable." The Appellate Division further held that the disputed evidence did not constitute statements against interest for purposes of N.J.R.E. 803(c)(25). It declined to reverse the trial court's denial of plaintiffs' post-verdict motion, however.

The Court granted Universal's petition for certification. 235 N.J. 467 (2018).

**HELD:** The excerpts from the settling defendants' interrogatory answers and corporate representative depositions were admissible as statements against interest under N.J.R.E. 803(c)(25). Those statements, in combination with other evidence presented at trial, gave rise to a prima facie showing that the settling defendants bore some fault in this matter. The trial court properly submitted to the jury the question of whether a percentage of fault should be apportioned to the settling defendants.

1. The Comparative Negligence Act and the Joint Tortfeasors Contribution Law comprise the statutory framework for the allocation of fault when multiple parties are alleged to have contributed to the plaintiff's harm. They operate in tandem to promote the distribution of loss in proportion to the respective faults of the parties causing that loss. The Court has long construed that statutory scheme to authorize an allocation of fault to a settling defendant in appropriate settings. In Young v. Latta, the Court held that a non-settling defendant may seek the allocation of fault to a settling defendant even if the non-settling defendant has filed no crossclaim against the settling defendant. 123 N.J. 584, 596 (1991). The Young Court stressed that the non-settling defendant must give the plaintiff "fair and timely notice" of its intent to assert the fault of a settling defendant. Id. at 597; see also R. 4:7-5(c) (codifying the rule of Young). And the defendant seeking apportionment of fault to a settling defendant has the burden to prove by a preponderance of the evidence the elements of the claim against the settling defendant. In order for the trial court to instruct the jury to consider allocating a percentage of liability to the settling defendant, the non-settling defendant must present to the trial court prima facie evidence supporting any claims asserted against that defendant. (pp. 23-29)

2

2.  Universal relied on the depositions and the answers to interrogatories it presented at trial to argue in favor of allocation, and it had the burden to show that the testimony was admissible under one or more Rules of Evidence.  Each of the statements disputed in this appeal constitutes hearsay as defined in N.J.R.E. 801(c).  Hearsay is generally inadmissible "except as provided by [the rules of evidence] or by other law."  N.J.R.E. 802.  In both civil and criminal cases, N.J.R.E. 803(c)(25) prescribes an exception to the hearsay rule for certain statements that, when made, were against the declarant's interest.  Admission of a statement under N.J.R.E. 803(c)(25) is not contingent on a showing of extrinsic circumstances bearing on the general reliability or trustworthiness of the declarant's statement.  Moreover, N.J.R.E. 803(c)(25) does not require a showing that the declarant is unavailable in order for that declarant's statement against interest to be admissible.  Whether a statement is in fact against the defendant's interest must be determined from the circumstances of each case.  As does the threat of penal consequences in a criminal setting, the prospect that the declarant may be subject to civil liability by virtue of the statement may satisfy N.J.R.E. 803(c)(25).  The declarant, however, need not be a party to the action in which the statement is admitted.  (pp. 29-33)

3.  Here, for purposes of N.J.R.E. 803(c)(25), the declarant in each instance was the settling defendant itself, not an officer or employee of that corporation.  When the statements at issue were made, they were adverse in three significant respects to the settling defendants' litigation positions in this matter and/or other asbestos cases.  Notably, some statements provided information relevant to allegations of successor liability; some supported plaintiffs' allegations that the defendants or their predecessors in interest manufactured and/or sold products containing asbestos; and some included statements against interest on the issue of warnings.  The answers to interrogatories and deposition testimony at issue satisfied the standard of N.J.R.E. 803(c)(25) and were admissible pursuant to that rule.  The Court does not reach admissibility under N.J.R.E. 804(b)(1), N.J.R.E. 803(b)(1), or Rule 4:16-1(b).  (pp. 33-39)

4.  Plaintiff did not file a cross-petition challenging the denial of her motion for a judgment notwithstanding the verdict or a new trial, so the issue of Universal's prima facie showing as to the fault of the settling defendants is not before the Court.  The trial court properly allowed Universal to present its proofs in support of apportionment of fault to the settling defendants.  It was the jury's province to accept or reject those proofs, and the Court leaves its verdict undisturbed.  (pp. 39-41)

**The judgment of the Appellate Division is REVERSED, and the judgment of the trial court is REINSTATED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON'S opinion.**

3

SUPREME COURT OF NEW JERSEY

A-16 September Term 2018

081602

Donna Rowe, individually and
as Executrix and Executrix
ad Prosequendum of the Estate
of Ronald Rowe,

Plaintiff-Respondent,

v.

Bell & Gossett Company, a
subsidiary of ITT Industries;
Borg Warner Morse TEC, f/k/a
Borg Warner; Bryant
Manufacturing, n/k/a Carrier
Corp.; Burnham LLC, individually
and as successor to Burnham
Corporation, individually and as
successor-in-interest to Federal
Boiler and Radiator Co.; Crane
Co., individually and as
successor to Jenkins Valves, Inc.,
a/k/a Jenkins Bros.; Crane
Pumps & Systems, Inc.; Dana
Companies, LLC, f/k/a Dana
Corporation, individually and as
successor-in-interest to Victor
and Spicer; ECR International,
Inc., as successor-in-interest
to Dunkirk Radiator Corporation;
General Electric Company;
General Plumbing Supply, Inc.,
as successor-in-interest to
Ridgewood Corp.; HB Smith Co.,
Inc.; Honeywell International,

1

Inc., f/k/a Allied Signal, Inc., as successor-in-interest to The Bendix Corporation; J.H. France Refractories Company; Johnson Controls, Inc., individually and as successor-in-interest to York International Corp.; Lennox Furnace Co., a/k/a Lennox Industries; Nutley Heating & Cooling Supply Company; Peerless Industries, Inc. f/d/b/a Peerless Heater Co.; Ridgewood Corp.; Sid Harvey Industries, Inc.; Trane US, Inc., as successor to American Standard Inc.; Union Carbide Corp.; Weil-McLain Company, Inc.; Compudyne Corporation, individually and as successor to York-Shipley; New Jersey Plumbing Group, LLC, d/b/a Blackman Plumbing Supply Company, Inc., as successor-in-interest to Orange County Plumbing Supply Company and Ridgewood Corporation; Orange County Plumbing Group, LLC, as successor-in-interest to Orange County Plumbing Supply Co. and Ridgewood Corporation; York International, Inc.,

Defendants,

and

Hilco, Inc., as successor-in-interest to Universal Engineering Co., Inc.,

2

Defendant-Appellant.

---

On certification to the Superior Court,
Appellate Division.

---

| Argued | Decided |
|---|---|
| March 25, 2019 | September 11, 2019 |

---

Patricia M. Henrich argued the cause for appellant
(Reilly, McDevitt & Henrich, attorneys; Patricia M.
Henrich and Brandy L. Harris, on the briefs).

Amber R. Long argued the cause for respondent (Levy
Konigsberg, attorneys; Amber R. Long, on the briefs).

Marc S. Gaffrey argued the cause for amicus curiae New
Jersey Defense Association (Hoagland, Longo, Moran,
Dunst & Doukas, attorneys; Marc S. Gaffrey, on the
brief).

Michael G. Donahue argued the cause for amicus curiae
New Jersey Association for Justice (Stark & Stark,
attorneys; Michael G. Donahue, on the brief).

McCarter & English, and Gibbons, et al., attorneys for
amici curiae Honeywell International, Inc., et al. (John C.
Garde and Wilfred P. Coronato, of counsel and on the
brief, Kim M. Catullo and Ethan D. Stein, of counsel, and
Steven H. Del Mauro, on the brief).

McGivney, Kluger & Cook, et al., attorneys for amici
curiae Ace Plumbing & Electrical, et al. (Thomas B.
McNulty, William D. Sanders, and Trish L. Wilson, of
counsel and on the brief).

---

JUSTICE PATTERSON delivered the opinion of the Court.

---

Pursuant to the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.8, and the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 to -5, a defendant may seek the allocation of a percentage of fault to a codefendant with whom the plaintiff has settled. Krzykalski v. Tindall, 232 N.J. 525, 534-37 (2018); Young v. Latta, 123 N.J. 584, 593-96 (1991). If the factfinder assigns a percentage of fault to a settling defendant, the trial court molds the judgment so that the allocation operates as a credit against the plaintiff's recovery of damages. See N.J.S.A. 2A:15-5.2(d); Young, 123 N.J. at 595; Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548, 569 (1980).

This appeal arises from the trial court's judgment in an asbestos product liability action. Plaintiffs Ronald Rowe and Donna Rowe alleged that Ronald Rowe contracted mesothelioma as a result of exposure to asbestos-containing products sold by defendants. Eight defendants settled with plaintiffs prior to trial.

At trial, the sole remaining defendant offered into evidence excerpts from the settling defendants' interrogatory answers and deposition testimony given by those defendants' corporate representatives. In the answers to interrogatories and corporate representative depositions, the settling defendants made statements contrary to their interests in this case and other

4

asbestos product liability matters that were pending against them at the time the statements were made.

In support of its argument that the interrogatory answers and deposition testimony should be admitted at trial, the non-settling defendant relied on three exceptions to the rule against hearsay: N.J.R.E. 804(b)(1) (testimony in prior proceedings); N.J.R.E. 803(b)(1) (statement by a party-opponent); and N.J.R.E. 803(c)(25) (statement against interest). Plaintiffs objected to the admission of the evidence and opposed any allocation of fault to the settling defendants.

The trial court excluded portions of the disputed discovery material, but admitted into evidence excerpts from the interrogatory answers of all eight settling defendants and portions of the deposition testimony of six of those defendants' corporate representatives. The court permitted the jury to consider allocating a percentage of fault to the eight settling defendants.

The jury returned a verdict in plaintiffs' favor, but found that the non-settling defendant met its burden to prove that the settling defendants bore some measure of fault. The jury allocated a percentage of fault to each of those defendants, thus reducing plaintiffs' recovery of damages against the non-settling defendant.

5

Plaintiffs appealed the trial court's judgment. The Appellate Division reversed that judgment, holding that the trial court had improperly admitted the settling defendants' interrogatory answers and deposition testimony. It remanded the case to the trial court for a new trial with respect to the allocation of fault.

We hold that the disputed excerpts from the settling defendants' interrogatory answers and corporate representative depositions were admissible as statements against interest under N.J.R.E. 803(c)(25). At the time that the settling defendants made those statements, each statement was "so far contrary" to those defendants' "pecuniary, proprietary, or social interest[s]," and "so far tended to subject" the defendants "to civil . . . liability," that "a reasonable person in [defendants'] position would not have made the statement unless the person believed it to be true." See ibid. Those statements, in combination with other evidence presented at trial, gave rise to a prima facie showing that the settling defendants bore some fault in this matter. The trial court properly submitted to the jury the question of whether a percentage of fault should be apportioned to the settling defendants.

Accordingly, we reverse the Appellate Division's judgment and reinstate the judgment entered by the trial court in accordance with the jury's allocation of fault.

6

## I.

## A.

We derive our summary of the facts from plaintiffs' complaint, the deposition testimony of plaintiff Ronald Rowe, and other documents in the trial record.

Plaintiff Ronald Rowe, born in 1931, was diagnosed with mesothelioma in March 2014. He and his wife, plaintiff Donna Rowe, alleged that his mesothelioma resulted from exposure to asbestos for more than three decades. Plaintiffs contended that Ronald Rowe worked with asbestos-containing brakes, clutches, and gaskets while repairing his personal vehicles from 1949 until the late 1970s and while employed as a mechanic in a car dealership from 1952 to 1954. Rowe testified that in his automotive repair work, he used clutches, brakes, and other equipment manufactured by several of the defendants named in plaintiffs' action.

Plaintiffs further asserted that Ronald Rowe was exposed to asbestos while working as a boiler serviceman for various businesses, and for his own business, from 1954 through his retirement in 1985. Rowe testified that his job duties during those time periods included mixing asbestos-containing dry furnace cement while installing and servicing boilers, as well as removing hardened asbestos-containing cement while repairing and removing heating

7

equipment. He stated that he also disassembled pipes, conducted regular maintenance on boilers, and installed new commercial and residential heating equipment. Rowe stated that in performing those tasks, he was exposed to asbestos-containing boilers, furnaces, burners, pumps, valves, insulation, and gaskets, as well as dust from asbestos-containing cement.

B.

Plaintiffs filed an asbestos product liability action against twenty-seven defendants, pleading claims for strict liability based on the alleged breach of the duty to warn, negligence, and the breach of express and implied warranties. Plaintiff Donna Rowe also asserted a per quod claim. Plaintiffs sought compensatory and punitive damages, attorneys' fees, costs, and other relief.

Plaintiffs alleged that some defendants were manufacturers and/or sellers of asbestos-containing products to which Ronald Rowe was exposed, and that other defendants were successors in interest to entities that had been manufacturers or sellers of such products.

One defendant named in plaintiffs' complaint was Hilco, Inc. Plaintiffs alleged that Hilco is the successor in interest to an entity no longer in existence, Universal Engineering Co., Inc., a seller of asbestos-containing dry cement. Hilco disputed plaintiffs' allegation that it was a successor in interest

to Universal Engineering Co., Inc., and denied that it was liable for Ronald Rowe's alleged exposure to that company's products.[1]

The matter was assigned to the Law Division judge designated to conduct centralized case management of all state court asbestos cases in accordance with Rule 4:38A. It was therefore subject to the general order governing asbestos litigation in Middlesex County, which incorporates the New Jersey Rules of Court regarding discovery and prescribes procedures for the service of standard interrogatories, the conduct of depositions, and other aspects of the asbestos litigation.

Universal adopted a standard answer that it had filed in the centralized asbestos litigation as its answer in this case. In that pleading, Universal asserted against all other defendants crossclaims for contribution pursuant to the Comparative Negligence Act and the Joint Tortfeasors Contribution Law, and for common-law indemnification.

The parties conducted discovery. Pursuant to Rule 4:17-4(a), defendants served certified answers to interrogatories. Each defendant's answers addressed, among other subjects, the defendant's corporate structure and history, its manufacture and/or sale of asbestos-containing products, and

---

[1] Without prejudice to either party's position regarding successor liability, we use the name "Universal" to denote both Universal Engineering Co., Inc., and Hilco, Inc.

9

whether any asbestos-containing products it manufactured or sold were accompanied by warnings addressing the dangers of exposure to asbestos.

Plaintiffs' counsel relied in this case on depositions of defendants' corporate representatives, which were conducted in other asbestos product liability cases pursuant to either Rule 4:14-2(c)[2] or analogous rules of other jurisdictions. The current and former employees designated to be deposed as corporate representatives testified not as individuals, but on behalf of the respective defendant corporations.

In their pretrial designations of evidence to be presented at trial, plaintiffs designated portions of defendants' answers to interrogatories and transcripts of defendants' corporate representative depositions from this matter and other asbestos product liability cases. Universal identified all the disputed evidence in its pretrial designations.

Prior to the commencement of trial, plaintiffs settled their claims with eight defendants: Borg Warner Morse Tec (Borg Warner); Burnham, LLC

---

[2] For civil cases pending in New Jersey courts, Rule 4:14-2(c) authorizes the service on a party, whether a public or private corporation, of a deposition notice designating "with reasonable particularity the matters on which examination is requested." The responding party must "designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf," and the witness so designated must testify "as to matters known or reasonably available to the organization." Ibid.

(Burnham), alleged to be successor in interest to Burnham Corporation; Dana Companies, LLC (Dana), alleged to be successor in interest to Victor Manufacturing & Gasket Company; ECR International, Inc. (ECR), alleged to be successor in interest to Dunkirk Radiator Corporation; Honeywell International, Inc. (Honeywell), alleged to be successor in interest to The Bendix Corporation; Peerless Industries, Inc. (Peerless); Trane US, Inc. (Trane), alleged to be successor in interest to American Standard, Inc.; and Weil-McLain Company, Inc. (Weil-McLain).[3]  When the trial commenced, Universal was the only defendant remaining in the case.

In advance of the first scheduled trial date, and again after that trial date was adjourned, Universal served on counsel for the eight settling defendants notices in lieu of subpoena pursuant to Rule 1:9-1.  In its notices, Universal demanded the appearance at trial of a designated representative of each settling defendant and stated that its notices would remain in effect should the claims against that defendant be settled or dismissed.

Counsel for Universal certified to the trial court that six of the defendants -- Burnham, Dana, ECR, Honeywell, Peerless, and Weil-McLain --

_____

[3]  The record does not reveal the timing or terms of plaintiffs' settlements with the eight defendants, or the reasons for the dismissal of plaintiffs' claims against defendants named in the action other than Universal and the eight settling defendants.

11

responded to Universal's notices in lieu of subpoena that their corporate representatives lived outside New Jersey and would not appear at trial. Universal's counsel further certified that the attorneys representing the other two defendants, Borg Warner and Trane, responded that those defendants were unable to produce a corporate representative to testify at trial.

C.

On the second day of trial, plaintiffs moved to preclude Universal from presenting proofs of the settling defendants' fault or seeking to apportion fault to those defendants. Plaintiffs argued that Universal had not disclosed in discovery the proofs on which it intended to rely and had proffered no expert testimony on medical causation in support of the proposed allocation of fault. Universal responded that in order to prove the fault of the settling defendants, it intended to rely on documents produced and designated by plaintiffs in their pretrial disclosures and on the testimony of plaintiffs' expert in occupational and environmental medicine. The trial court denied plaintiffs' application without prejudice to their renewal of that application after the presentation of the evidence.

Universal moved for the admission into evidence of excerpts from the settling defendants' answers to interrogatories and the deposition testimony of those defendants' corporate representatives, contending that the evidence was

admissible as testimony in a prior proceeding under N.J.R.E. 804(b)(1), statements by a party-opponent under N.J.R.E. 803(b)(1), and statements against interest under N.J.R.E. 803(c)(25). Plaintiffs objected. They contended that the evidence was inadmissible under N.J.R.E. 803(b)(1) and N.J.R.E. 804(b)(1) because Universal intended to offer it against plaintiffs, not against the defendants who had made the statements, and that Universal had not demonstrated that the corporate representatives were unavailable to testify at trial. They further contended that the answers to interrogatories and corporate representative deposition testimony did not constitute statements against interest under N.J.R.E. 803(c)(25).

The trial court granted in part and denied in part Universal's application to admit the settling defendants' interrogatory answers and deposition testimony. Evidently relying on N.J.R.E. 803(b)(1), and noting that Universal had asserted crossclaims against the settling defendants, the trial court admitted the settling defendants' interrogatory answers as statements by a party to the case. Although the court cited N.J.R.E. 804(b)(1) with respect to only one settling defendant, it deemed the corporate representatives of six out-of-state settling defendants to be unavailable to testify at trial, and admitted those corporate representatives' deposition testimony as the prior testimony of unavailable declarants.

13

The trial court excluded the deposition testimony of the corporate representatives of Honeywell and Trane on the grounds that those companies were based in New Jersey and, therefore, their designated corporate representatives were available to testify regardless of where they lived. It also excluded portions of certain defendants' answers to interrogatories and deposition testimony proffered by Universal on the grounds that the evidence was speculative or irrelevant to the theories of liability at issue in the trial.

In support of Universal's position that the jury should allocate fault to the settling defendants, its counsel read to the jury the admitted excerpts from the settling defendants' interrogatory answers and the deposition testimony of the corporate representatives. Universal's counsel also cross-examined plaintiffs' expert in occupational and environmental medicine on the effect of Ronald Rowe's exposures to asbestos-containing products other than Universal's dry cement, and presented to the jury excerpts from Rowe's discovery deposition regarding those alternative exposures.

At the close of the evidence, plaintiffs moved for an order barring apportionment to the settling defendants. They argued before the trial court that Universal had failed to present evidence on which a reasonable jury could allocate fault to the settling defendants. In response, counsel for Universal offered to explain to the trial court how the jury could reasonably allocate fault

14

to the settling defendants, relying on the evidence of Ronald Rowe's exposure to the settling defendants' products and the absence of warnings on certain of those products.

The trial court stated that no such showing would be necessary. It concluded that Universal had submitted sufficient factual proofs to warrant allocation of fault to the settling defendants and denied plaintiffs' motion to bar such an allocation.

The trial court instructed the jury that plaintiffs had settled their dispute with the settling defendants and cautioned the jury not to speculate as to the reasons for, or amounts of, those settlements. It explained to the jury Universal's burden to prove its claims regarding the settling defendants and described each element of those claims. The court told the jury that plaintiffs' recovery would be reduced by any percentage of fault allocated to the settling defendants.

The jury returned a verdict in plaintiffs' favor and assessed damages in the amount of $1,500,000.[4] It indicated on the verdict sheet, however, that it

---

[4] The damages award consisted of $250,000 for Ronald Rowe's disability, impairment, loss of enjoyment of life, and pain and suffering until the date of the verdict; $500,000 for his future disability, impairment, loss of enjoyment of life, and pain and suffering; $250,000 for Donna Rowe's loss of services, society, and consortium until the date of the verdict; and $500,000 for her future loss of services, society, and consortium.

15

found Universal had met its burden to prove by a preponderance of the evidence that all eight settling defendants had "manufactured, sold, distributed, and/or specified [the use of] a product that was not reasonably fit, suitable[,] and safe for its intended or foreseeable use without warnings"; that Ronald Rowe had been exposed to asbestos by using those products; and that Rowe's exposure to each defendant's products was a substantial factor in his injuries. The jury allocated twenty percent of the fault to Universal, five percent to Borg Warner, fourteen percent to Burnham, six percent to Dana, nine percent to ECR, fourteen percent to Honeywell, twelve percent to Peerless, ten percent to Trane, and ten percent to Weil-McLain.

Plaintiffs moved for judgment notwithstanding the verdict pursuant to Rule 4:40-2 or, in the alternative, a new trial pursuant to Rule 4:49-1. They contended that the jury's allocation of only twenty percent of the fault to Universal constituted a miscarriage of justice in light of the evidence against that defendant. Plaintiffs also asked the trial court to vacate the jury's allocation of fault to the settling defendants. They argued that the settling defendants' statements in answers to interrogatories and depositions were improperly admitted and that, without those statements, there was insufficient evidence to warrant apportionment of fault to those defendants.

16

Noting that Universal based its allocation claims not only on the settling defendants' statements but also on Ronald Rowe's testimony about his exposures and the testimony of plaintiffs' expert on occupational and environmental medicine, the trial court denied the motion.

In accordance with the jury's apportionment of fault, the trial court molded the verdict and entered judgment in plaintiffs' favor for damages and prejudgment interest in the amount of $304,252.70.

D.

Several weeks after the conclusion of trial, plaintiff Ronald Rowe died of mesothelioma.

Donna Rowe, as executrix of Ronald Rowe's estate and on her own behalf, appealed the trial court's judgment. The Appellate Division granted amicus curiae status to Honeywell and other entities that have been named as defendants in asbestos litigation.

Before the Appellate Division, plaintiff Donna Rowe challenged the introduction of the interrogatory responses and deposition testimony of the settling defendants on the grounds that those discovery materials constituted hearsay not within any exception set forth in the Rules of Evidence. She also

appealed the trial court's denial of her motion for judgment notwithstanding the verdict or a new trial.[5]

The Appellate Division reversed the trial court's judgment and remanded for a new trial on the apportionment of fault. It held that the disputed evidence was inadmissible as a statement of a party-opponent under N.J.R.E. 803(b)(1) because Universal did not offer that evidence against the settling defendants, but against plaintiffs. The Appellate Division concluded that the interrogatory answers and deposition testimony were similarly inadmissible under N.J.R.E. 804(b)(1) because the declarants were not "unavailable" within the meaning of N.J.R.E. 804(a)(4).

The Appellate Division further held that the disputed evidence did not constitute statements against interest for purposes of N.J.R.E. 803(c)(25). It acknowledged that a nonparty declarant's statement can qualify as a statement against interest in a civil case if it "so far tend[s] to subject declarant to civil . . . liability . . . that a reasonable person in declarant's position would not have made the statement unless the person believed it to be true." The Appellate

_____

[5] In addition, plaintiff argued for the first time on appeal that the trial court's jury instructions were prejudicial to her because the trial court told the jury that "some of the defendants settled their differences with the plaintiff." Relying on Theobold v. Angelos, 40 N.J. 295, 303-04 (1963), the Appellate Division rejected plaintiff's argument, and the jury instruction is not challenged before this Court.

Division reasoned, however, that the statements at issue in this case fell short of the standard of N.J.R.E. 803(c)(25) because they comprised only one piece of the broader picture required to establish liability. The court also deemed the evidence to be inadmissible under N.J.R.E. 803(c)(25) because "the existence of asbestos-containing products and the absence of warnings are objective, well-known historical facts that the settling defendants could not avoid acknowledging in the face of incontrovertible proof."

The Appellate Division declined to reverse the trial court's decision denying plaintiffs' motion for a judgment notwithstanding the verdict or a new trial. It stated, however, that the trial court had inadequately scrutinized Universal's proofs against the settling defendants and cautioned the trial court to separately assess the evidence against each settling defendant on remand.

E.

We granted Universal's petition for certification. 235 N.J. 467 (2018). We also granted the applications of the following entities to appear as amici curiae: New Jersey Association for Justice (NJAJ), New Jersey Defense Association (NJDA), and Ace Plumbing & Electrical and several other entities that have been named as defendants in asbestos litigation. We also permitted Honeywell and similarly situated entities to maintain their amicus status before this Court.

II.

A.

Universal argues that the Appellate Division failed to give sufficient deference to the evidentiary rulings of the trial court.  It argues that the trial court, long experienced in asbestos litigation, carefully considered each component of the disputed evidence and excluded a substantial portion of the evidence that Universal sought to present.  Universal asserts that it established that the corporate representatives were unavailable under N.J.R.E. 804(a)(4) and that their statements were therefore admissible as testimony in prior proceedings under N.J.R.E. 804(b)(1).  It argues that those proofs also constituted statements by a party-opponent under N.J.R.E. 803(b)(1) and statements against interest under N.J.R.E. 803(c)(25).

B.

Amici curiae NJDA, Honeywell and similarly situated entities, and Ace Plumbing & Electrical and similarly situated entities agree with Universal that the trial court properly admitted the disputed evidence.  They contend that the evidence was admissible under N.J.R.E. 804(b)(1), N.J.R.E. 803(b)(1), and N.J.R.E. 803(c)(25) and that the Appellate Division's decision precludes fair apportionment under the Comparative Negligence Act and Joint Tortfeasors Contribution Law.

20

## C.

Plaintiff contends that the Appellate Division properly enforced the Rules of Evidence in the allocation of fault to a settling defendant. She argues that Universal did not demonstrate that the settling defendants' corporate representatives were unavailable within the meaning of N.J.R.E. 804(a)(4) and that N.J.R.E. 804(b)(1) is, therefore, inapplicable. Plaintiff also asserts that the settling defendants' answers to interrogatories and deposition testimony were improperly admitted under N.J.R.E. 803(b)(1) and Rule 4:16-1(b) because the statements were offered against plaintiffs, not against the settling defendants. Plaintiff argues that the Appellate Division correctly found that the evidence did not qualify under N.J.R.E. 803(c)(25)'s hearsay exception for statements against interest. She contends that the Appellate Division properly cautioned the trial court on remand to separately assess the proofs submitted as to each settling defendant.

## D.

Amicus curiae NJAJ asserts that the statements at issue were not admissible under either N.J.R.E. 803(b)(1) or Rule 4:16-1(b) because they were not admitted against the party that made the statements, but against plaintiffs. It contends that the statements did not constitute prior testimony of

an unavailable declarant under N.J.R.E. 804(b)(1) or statements against interest under N.J.R.E. 803(c)(25).

## III.

## A.

We review the Appellate Division's decision reversing the trial court's admission into evidence of excerpts from the settling defendants' interrogatory answers and corporate designee deposition testimony. "When a trial court admits or excludes evidence, its determination is 'entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment.'" Griffin v. City of East Orange, 225 N.J. 400, 413 (2016) (alteration in original) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). Accordingly, "we will reverse an evidentiary ruling only if it 'was so wide [of] the mark that a manifest denial of justice resulted.'" Ibid. (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)).

As to issues of law, however, our review is de novo: "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

22

B.

The Comparative Negligence Act and the Joint Tortfeasors Contribution Law "comprise the statutory framework for the allocation of fault when multiple parties are alleged to have contributed to the plaintiff's harm." Krzykalski, 232 N.J. at 534 (quoting Town of Kearny v. Brandt, 214 N.J. 76, 96 (2013)).

The Comparative Negligence Act sets forth the procedure for a trial court's allocation of damages among tortfeasors. N.J.S.A. 2A:15-5.2(a). Pursuant to the Act, the factfinder first assesses "the full value of the injured party's damages," then determines "[t]he extent, in the form of a percentage, of each party's negligence or fault," so that "the total of all percentages of negligence or fault of all the parties to a suit shall be 100%." Ibid. "After the factfinder determines the total damages and allocates fault in accordance with N.J.S.A. 2A:15-5.2(a), the trial court molds the judgment based on those findings." Jones v. Morey's Pier, Inc., 230 N.J. 142, 159 (2017) (citing N.J.S.A. 2A:15-5.2(d)).

The Comparative Negligence Act thus promotes the principle that "[i]t is only fair that each person only pay for injuries he or she proximately caused." Fernandes v. DAR Dev. Corp., 222 N.J. 390, 407 (2015) (quoting Waterson v. Gen. Motors Corp., 111 N.J. 238, 267 (1988)). The statute "requires the 'jury

23

to make a good-faith allocation of the percentages of negligence among joint tortfeasors based on the evidence -- not based on the collectability or non-collectability' of the tortfeasors' respective shares of the damages." Krzykalski, 232 N.J. at 535 (quoting Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 121 (2004)). Indeed, "[t]he law favors apportionment even where the apportionment proofs are imprecise, allowing only for rough apportionment by the trier of fact." Ibid. (quoting Boryszewski v. Burke, 380 N.J. Super. 361, 384 (App. Div. 2005)).

In the Joint Tortfeasors Contribution Law, "the Legislature declared that '[t]he right of contribution exists among joint tortfeasors.'" Morey's Pier, 230 N.J. at 160 (alteration in original) (quoting N.J.S.A. 2A:53A-2). Under that statute, "'joint tortfeasors' are 'two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.'" Krzykalski, 232 N.J. at 534 (quoting N.J.S.A. 2A:53A-1). The statute was "enacted to promote the fair sharing of the burden of judgment by joint tortfeasors and to prevent a plaintiff from arbitrarily selecting his or her victim." Holloway v. State, 125 N.J. 386, 400-01 (1991). The Legislature's "basic purpose in creating the right of contribution was to achieve 'a sharing of the common responsibility [among tortfeasors] according to equity and natural justice.'" Magic Petroleum Corp.

24

v. Exxon Mobil Corp., 218 N.J. 390, 403 (2014) (alteration in original) (quoting Sattelberger v. Telep, 14 N.J. 353, 367-68 (1954)).

Applied together, the Comparative Negligence Act and the Joint Tortfeasors Contribution Law "implement New Jersey's approach to fair apportionment of damages among plaintiffs and defendants, and among joint defendants." Erny v. Estate of Merola, 171 N.J. 86, 99 (2002). The two statutes exist to "ensure that damages are ordinarily apportioned to joint tortfeasors in conformity to the factfinder's allocation of fault." Morey's Pier, 230 N.J. at 160. They operate in tandem to "promote 'the distribution of loss in proportion to the respective faults of the parties causing that loss.'" Brandt, 214 N.J. at 102 (quoting Brodsky, 181 N.J. at 114).

This Court has long construed our statutory scheme to authorize an allocation of fault to a settling defendant in appropriate settings, without regard to the amount of the settlement. Even before the Legislature replaced its prior scheme of pro rata apportionment of liability with apportionment based on a percentage of fault under the Comparative Negligence Act, this Court held that "a non-settling defendant's right to a credit reflecting the settler's fair share of the amount of the verdict -- regardless of the actual settlement -- represents the judicial implementation of the statutory right to contribution." Young, 123 N.J. at 591 (discussing Judson v. Peoples Bank &

25

<u>Tr. Co. of Westfield</u>, 17 N.J. 67, 92-94 (1954)).  Prior to the Court's decision in <u>Young</u>, however, the non-settling defendant had a right to an allocation of fault to a settling defendant only if that defendant had filed a crossclaim against the settling defendant.  <u>Id.</u> at 595-96; <u>Judson</u>, 17 N.J. at 93.

In <u>Young</u>, the Court concluded that a factfinder's determination of a settling defendant's percentage of fault is consistent with the Comparative Negligence Act's allocation principles.  123 N.J. at 592.  Noting that "[j]oint-and-several liability continues to loom over defendants in environmental-tort actions," the Court underscored the strategic importance of filing a crossclaim in many circumstances.  <u>Id.</u> at 596.  The Court held, however, that a non-settling defendant may seek the allocation of fault to a settling defendant even if the non-settling defendant has filed no crossclaim against the settling defendant.  <u>Ibid.</u>

The <u>Young</u> Court stressed that the non-settling defendant must give the plaintiff "fair and timely notice" of its intent to assert the fault of a settling defendant.  <u>Id.</u> at 597.  Noting that "[o]ur system of discovery is designed to make available information that is reasonably calculated to lead to relevant evidence concerning the respective positions of the parties," the Court cautioned that

> a plaintiff should know as early in the case as possible
> whether a defendant will seek to prove the fault of a co-

26

defendant. Plaintiffs should conduct their discovery accordingly. Defendants are obliged to stake out positions among themselves by taking full advantage of the scope of the Rules, which allow for discovery from "any other party," whether or not a cross-claim for contribution has been filed. A defendant who produces no expert report (whether its own or that of another party) and fails to allege well before trial the causative fault of a co-defendant may be precluded from asserting at trial that co-defendant's fault in the event of a settlement.

[Ibid. (citation omitted).]

Codifying the rule of Young, our court rules provide that a non-settling defendant need not assert a crossclaim in order to seek allocation of a percentage of fault to a settling defendant, and a credit "consistent with that allocation," provided that the "plaintiff was fairly apprised prior to trial that the liability of the settling defendant remained an issue and was accorded a fair opportunity to meet that issue at trial." R. 4:7-5(c); see also Krzykalski, 232 N.J. at 535-36 (noting the requirement of "'fair and timely notice' that the remaining defendants will argue that liability should be attributed to those defendants who have settled"); Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 209 (App. Div. 2006) (stating the requirement that the non-settling defendant give timely notice to the plaintiff).

In addition to the notice requirement, the defendant seeking apportionment of fault to a settling defendant has the burden to prove by a

27

preponderance of the evidence the elements of the claim against the settling defendant. See Morey's Pier, 230 N.J. at 166, 169; see also Green v. Gen. Motors Corp., 310 N.J. Super. 507, 546 (App. Div. 1998); Sullivan v. Combustion Eng'g, 248 N.J. Super. 134, 144 (App. Div. 1991).

In order for the trial court to instruct the jury to consider allocating a percentage of liability to the settling defendant, the non-settling defendant must present to the trial court prima facie evidence supporting any claims asserted against that defendant. See Mort v. Besser Co., 287 N.J. Super. 423, 433 (App. Div. 1996) (holding that, in light of the absence of proof of the settling defendant's negligence, the question of its fault "should not have been sent to the jury"); Young v. Latta, 233 N.J. Super. 520, 526 (App. Div. 1989) ("[I]f no issue of fact is properly presented as to the liability of the settling defendant, the fact finder cannot be asked, under N.J.S.A. 2A:15-5.2 or otherwise, to assess any proportionate liability against the settler.").

In the wake of a settlement, the prospect of an allocation of fault to the settling defendant may trigger stark changes to the parties' strategies. A plaintiff who, prior to the settlement, had an incentive to target the settling defendant may seek at trial to minimize that defendant's culpability or exonerate the defendant entirely. A non-settling defendant whose interests were previously aligned with those of the settling defendant may seek to

28

persuade the factfinder that the settling defendant was the primary cause of the plaintiff's harm.

The parties' tactical realignment poses special challenges for the trial court, which is charged with enforcing the court rules and the rules of evidence, determining whether the evidence warrants the jury's consideration of the settling defendant's fault, and properly instructing the jury.

C.

Against that backdrop, we review the trial court's admission into evidence of the disputed portions of the settling defendants' answers to interrogatories and corporate representative deposition testimony.

1.

Our court rules authorize the use of any deposition "by any party for the purpose of contradicting or impeaching the testimony of [the] deponent as a witness, or for any other purpose permitted by the Rules of Evidence." R. 4:16-1(a). Answers to interrogatories "may be used to the same extent as provided by R. 4:16-1(a) and R. 4:16-1(b) for the use of the deposition of a party." R. 4:17-8(a).

Neither the depositions nor the answers to interrogatories presented by Universal at trial were used to contradict or impeach the testimony of a witness; to the contrary, those discovery materials were offered as affirmative

29

evidence in support of an allocation of fault to the settling defendants. Accordingly, Universal could not present the deposition testimony based on Rule 4:16-1(a) alone. Instead, it had the burden to show that the testimony was admissible under one or more Rules of Evidence. For the same reason, Universal could not present the interrogatory answers under Rule 4:17-8(a) by virtue of that rule's cross-reference to Rule 4:16-1(a), unless a rule of evidence authorized their admission.

As the parties agree, each of the statements disputed in this appeal is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," and thus constitutes hearsay. N.J.R.E. 801(c). Hearsay is generally inadmissible "except as provided by [the rules of evidence] or by other law." N.J.R.E. 802. "Occasionally . . . exceptions [to the rule against hearsay] are created out of necessity and are justified on the ground that 'the circumstances under which the statements were made provide strong indicia of reliability.'" State v. White, 158 N.J. 230, 238 (1999) (quoting State v. Phelps, 96 N.J. 500, 508 (1984)).

In both civil and criminal cases, N.J.R.E. 803(c)(25) prescribes an exception to the hearsay rule for certain statements that, when made, were against the declarant's interest. It declares admissible

30

[a] statement which was at the time of its making so far contrary to the declarant's pecuniary, proprietary, or social interest, or so far tended to subject declarant to civil or criminal liability, or to render invalid declarant's claim against another, that a reasonable person in declarant's position would not have made the statement unless the person believed it to be true. Such a statement is admissible against an accused in a criminal action only if the accused was the declarant.

[N.J.R.E. 803(c)(25).]

The hearsay exception for statements against interest derives from "the theory that, by human nature, individuals will neither assert, concede, nor admit to facts that would affect them unfavorably" and that, accordingly, "statements that so disserve the declarant are deemed inherently trustworthy and reliable." Brown, 170 N.J. at 148-49 (quoting White, 158 N.J. at 238); accord State v. Williams, 169 N.J. 349, 358-59 (2001); State v. Nevius, 426 N.J. Super. 379, 393-94 (App. Div. 2012); One Step Up v. Sam Logistic, 419 N.J. Super. 500, 508 (App. Div. 2011).

Admission of a statement under N.J.R.E. 803(c)(25) is not contingent on a showing of "extrinsic circumstances bearing on the general reliability or trustworthiness of the declarant's statement . . . ." White, 158 N.J. at 240. "Rather, it is a statement's self-incriminating character which renders a declaration against interest." Ibid.; see also Nevius, 426 N.J. Super. at 394. Moreover, N.J.R.E. 803(c)(25) does not require a showing that the declarant is

31

unavailable in order for that declarant's statement against interest to be admissible. Hill v. Dep't of Corr., 342 N.J. Super. 273, 301 (App. Div. 2001); see also N.J.R.E. 803 (entitled "Hearsay Exceptions Not Dependent on Declarant's Unavailability"); State v. Abrams, 140 N.J. Super. 232, 237 (App. Div. 1976) (applying predecessor to N.J.R.E. 803(c)(25)). Thus, such a "statement is admissible, even though the declarant does not testify at trial." Hill, 342 N.J. Super. at 301.

"Whether a statement is in fact against [the defendant's] interest must be determined from the circumstances of each case." Brown, 170 N.J. at 149 (alteration in original) (quoting Williamson v. United States, 512 U.S. 594, 601 (1994)). As the Appellate Division has observed in the setting of a criminal case, Nevius, 426 N.J. Super. at 393-97, the test of admissibility under N.J.R.E. 803(c)(25) is "whether, in the context of the whole statement, the particular remark was plausibly against the declarant's penal interest, even though it might be neutral or even self-serving if considered alone[,]" id. at 394 (quoting Abrams, 140 N.J. Super. at 236). "Evidence that [a statement was] possibly tainted by an impure motive appropriately bears only on its value." DCPP v. N.T., 445 N.J. Super. 478, 499 (App. Div. 2016) (alteration in original) (quoting Abrams, 140 N.J. Super. at 236).

In order to be admissible as a statement against interest, a statement must have been contrary to the declarant's interest at the time that it was made. N.J.R.E. 803(c)(25); Brown, 170 N.J. at 149; State v. Norman, 151 N.J. 5, 31 (1997). As does the threat of penal consequences in a criminal setting, the prospect that the declarant may be subject to civil liability by virtue of the statement may satisfy N.J.R.E. 803(c)(25). See, e.g., Hill, 342 N.J. Super. at 300-01.

The declarant, however, need not be a party to the action in which the statement is admitted. See, e.g., Speaks v. Jersey City Hous. Auth., 193 N.J. Super. 405, 407-08, 412-13 (App. Div. 1984) (finding nonparty's statement admissible under N.J.R.E. 803(c)(25)'s predecessor, Evid. R. 63(10)); State v. West, 145 N.J. Super. 226, 233-34 (App. Div. 1976) (same).

2.

We apply the standard of N.J.R.E. 803(c)(25) to the answers to interrogatories and deposition testimony that Universal sought to admit as statements against interest.

We conclude that for purposes of N.J.R.E. 803(c)(25), the declarant in each instance was the settling defendant itself, not an officer or employee of that corporation. Each set of interrogatory answers was certified by an "agent or authorized representative" of the settling defendant, thus binding that

33

defendant to the responses. R. 4:17-4(a). Similarly, in each case, the deposition testimony was given by a witness designated to testify as a corporate representative in accordance with Rule 4:14-2(c) or an analogous rule, and that witness testified not on his or her own behalf, but on behalf of the settling defendant. Consequently, when we apply N.J.R.E. 803(c)(25) to the disputed evidence, we consider whether a given statement was against the interest of the settling defendant, not whether that statement contravened the interest of the individual who certified the answers or testified at a deposition.

To be admissible under N.J.R.E. 803(c)(25), each disputed interrogatory answer or deposition testimony in this case must have been "so far contrary to [the declarant defendant's] pecuniary, proprietary, or social interest, or so far tended to subject [that defendant] to civil or criminal liability . . . that a reasonable person in [that defendant's] position would not have made the statement unless the person believed it to be true." When the relevant statements were made, each declarant was a defendant in this case or in other asbestos product liability cases. Accordingly, we consider the potential impact of the statements on the declarant defendants' interests in this case and other asbestos litigation.

34

When the statements at issue were made, they were adverse in three significant respects to the settling defendants' litigation positions in this matter and/or other asbestos cases.

First, six settling defendants -- Borg Warner, Burnham, Dana, ECR, Honeywell, and Trane -- faced allegations that they were successors in interest to entities that historically manufactured or sold asbestos-containing products but no longer existed. See generally Lefever v. K.P. Hovnanian Enters., 160 N.J. 307, 310 (1999) (stating test for successor liability in certain product liability settings); Ramirez v. Amsted Indus., Inc., 86 N.J. 332, 349-50 (1981) (same). Statements made in several of those defendants' interrogatory answers, and in one settling defendant's corporate representative deposition, directly addressed the question of successor liability, either by reciting corporate structure and history or by conceding that the named defendant was the successor in interest of a prior entity. Those statements were "so far contrary" to those settling defendants' pecuniary and proprietary interests, and "so far tended to subject" them to civil liability, that a "reasonable person" in defendants' position would not have made the statements unless that person believed them to be true. See N.J.R.E. 803(c)(25).

Second, portions of the eight settling defendants' interrogatory answers, as well as six of those defendants' deposition testimony, supported plaintiffs'

35

allegations that the defendants or their predecessors in interest manufactured and/or sold products containing asbestos. As to some of those defendants, the statements additionally supported allegations that individuals using those products could have been exposed to asbestos. Those statements were "so far contrary" to the defendants' interests, and "so far tended to subject" them to civil liability, that a "reasonable person" in their position would not have made them unless that person believed them to be true. See ibid.

Third, the interrogatory answers of settling defendants Burnham, ECR, Peerless, and Trane, and the deposition testimony of the corporate representatives of settling defendants Borg Warner, Burnham, Dana, and ECR, included statements against interest on the crucial issue of warnings. Those interrogatory answers and that deposition testimony indicated that the defendant companies or entities alleged to be predecessor companies sold asbestos-containing products without warnings about the dangers of asbestos exposure during a period that was clearly relevant to this case and other asbestos cases in which those defendants were sued. Those statements were consequently "so far contrary" to the defendants' interests, and "so far tended to subject" them to civil liability, that a "reasonable person" in their position would not have made the statements unless that person believed them to be true. See ibid.

36

Two of the settling defendants, Honeywell and Weil-McLain, were in a position different from that of the other six defendants with respect to warnings. Honeywell and Weil-McLain stated in the disputed discovery that they provided asbestos-related warnings on asbestos-containing products beginning in the 1970s.[6] Although those statements could strengthen the two defendants' positions with respect to any allegations of exposure to asbestos in their products after the date on which the defendants added asbestos-related warnings to their asbestos-containing products, those two defendants confirmed that during prior years relevant to this and other asbestos cases, they sold such products without such warnings. Moreover, as we stated in a criminal setting, "[w]e know of no rule that eviscerates the character of a statement against penal interest and denies admission of the statement because it is a mixture of exculpatory and incriminatory statements." State v. Weaver, 219 N.J. 131, 158-59 (2014); accord N.T., 445 N.J. Super. at 499-500. Those

_____

[6] The interrogatory answers of settling defendant Honeywell stated that Honeywell provided a warning on asbestos-containing products, "to explicitly make . . . customers awar[e] of the [product's] asbestos component," beginning in 1973. The interrogatory answers of settling defendant Weil-McLain indicated that Weil-McLain provided a warning on asbestos-containing products beginning in 1974, "indicating that the product contained asbestos fibers, 'avoid creating dust, breathing asbestos dust may cause serious bodily harm.'" In an excerpt from its corporate representative deposition, offered into evidence by Universal, settling defendant Weil-McLain stated that it did not include a warning, "concerning the dangers of asbestos," on the boilers that it manufactured and sold.

37

defendants' statements about warnings, when those statements were made, were "so far contrary" to the defendants' interests that they meet the test of N.J.R.E. 803(c)(25).

The Appellate Division reasoned that the statements at issue were inadmissible under N.J.R.E. 803(c)(25) because the fact that "a particular defendant manufactured or sold a product containing asbestos but did not warn about its hazards is only one piece of the much larger picture required to establish liability." We disagree. Nothing in N.J.R.E. 803(c)(25) requires a declarant's statement to establish all elements of an adversary's cause of action in order to be admissible as a statement against interest. Indeed, it is difficult to imagine any single statement that would address all elements of a cause of action in a complex product liability case such as this.

Nor do we share the Appellate Division's view that the statements were inadmissible under N.J.R.E. 803(c)(25) because "the existence of asbestos-containing products and the absence of warnings are objective, well-known historical facts that the settling defendants could not avoid acknowledging in the face of incontrovertible proof." The settling defendants did not simply acknowledge the "existence" of asbestos-containing products sold without warnings; they admitted that they manufactured or sold such products without warnings during all or part of the relevant period. Nothing in the language of

38

N.J.R.E. 803(c)(25), or our case law construing that rule, suggests that it is limited to statements against interest that address novel or controversial issues, or statements that constitute the only proof of a given claim.

In short, all of the excerpts from the settling defendants' answers to interrogatories and corporate representative deposition testimony at issue in this case satisfied the standard of N.J.R.E. 803(c)(25) and were admissible pursuant to that rule. We do not reach the question whether the evidence was admissible under N.J.R.E. 804(b)(1) (testimony in prior proceedings), N.J.R.E. 803(b)(1) (statements by party-opponent), or Rule 4:16-1(b).

### D.

In addition to disputing the admissibility of the settling defendants' interrogatory answers and deposition testimony, plaintiff argued before the Appellate Division that the trial court improperly denied her motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. That motion was premised in part on the argument that Universal had failed to present prima facie evidence sufficient to warrant an allocation of fault to the settling defendants.

The Appellate Division rejected one of the arguments made by plaintiff in support of her motion for a judgment notwithstanding the verdict and a new trial: her contention that the jury had improperly ignored the evidence of

asbestos exposure when it allocated only twenty percent of the fault to Universal. It accordingly affirmed the trial court's denial of plaintiff's motion. The Appellate Division nonetheless stated that the trial court had insufficiently scrutinized the proofs presented by Universal in support of an allocation of fault to the settling defendants. It held that Universal had presented no proof of asbestos exposure as to some of the settling defendants and cautioned the trial court to assess those proofs as to each defendant on remand.

In its petition for certification, Universal argued that the Appellate Division improperly evaluated the evidence that it presented supporting apportionment of fault to the settling defendants. Plaintiff did not file a cross-petition challenging the denial of her motion for a judgment notwithstanding the verdict or a new trial. Instead, she characterized the Appellate Division's comments regarding Universal's allocation proofs as dicta and argued that those comments did not warrant a grant of certification in this case.

In light of the Appellate Division's unchallenged decision affirming the trial court's denial of plaintiff's motion for a judgment notwithstanding the verdict or a new trial, the issue of Universal's prima facie showing as to the fault of the settling defendants is not before the Court. The trial court properly allowed Universal to present its proofs in support of apportionment of fault to

the settling defendants.  It was the jury's province to accept or reject those proofs, and we leave its verdict undisturbed.

## IV.

The judgment of the Appellate Division is reversed, and the trial court's judgment is reinstated.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON'S opinion.