JUSTICE SOLOMON delivered the opinion of the Court.
*984 **529 In this automobile accident case brought under the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.8 (CNA), we are called upon to determine whether a jury should be asked to apportion fault between a named party defendant and a known but unidentified defendant (John Doe). We conclude that the jury properly apportioned fault between the named party defendant David Tindall (defendant) and the John Doe defendant because plaintiff Mark Krzykalski (plaintiff) and defendant acknowledged the role of John Doe in the accident, plaintiff's Uninsured Motorist (UM) carrier was aware of the litigation, and plaintiff had "fair and timely" notice that defendant would assert that John Doe was the cause of the accident.
**530 I.
According to the appellate record, this case arises out of a car accident in Florence Township. The car driven by plaintiff was in the left lane traveling north, and the car driven by defendant was directly behind plaintiff's car. As the left-lane traffic proceeded through an intersection, a vehicle in the right lane driven by John Doe unexpectedly made a left turn, cutting off the cars in the left lane. Plaintiff was able to stop his car without striking the vehicle in front of him. Defendant, however, was unable to stop in time and rear-ended plaintiff's vehicle.
Plaintiff suffered serious injuries in the accident and filed a UM claim against his automobile insurance carrier. Plaintiff rejected his insurance company's offer to settle the UM claim for the policy limits and sued defendant and John Doe[1] for negligence. In defendant's answer, he asserted third-party negligence as a defense, included cross-claims for indemnity and contribution from any co-defendants, and demanded fault allocation against any defendants that might settle before trial.
Prior to trial, plaintiff moved for a directed verdict against defendant. The trial court denied plaintiff's motion, and the case proceeded to a jury trial. During trial, plaintiff again refused his UM carrier's settlement offer for the full policy limits on the UM claim, and the UM carrier chose not to intervene in the lawsuit. At the conclusion of the trial, over plaintiff's objection, the trial court included John Doe on the verdict sheet and instructed the jury to allocate fault between defendant and John Doe in the event that both parties were found negligent.
The jury found defendant three percent negligent and John Doe ninety-seven percent negligent. Ultimately, the jury awarded **531 plaintiff $107,890 in damages. The trial court denied plaintiff's post-verdict motion for a new trial or additur.
On appeal, the Appellate Division affirmed, concluding that an alleged tortfeasor does not need to be an identified party for his or her negligence and degree of responsibility to be considered by a jury. In the panel's view, precluding fault allocation to known but unidentified defendants would give litigants in plaintiff's position an improper windfall. The appellate panel reasoned that similarly situated plaintiffs could recover all of their damages from the identified defendant and then also receive compensation from their UM carrier for the known but unidentified defendant's *985 share of the fault. A member of the panel, writing separately, concurred in the opinion, stating that allowing the jury to assess the fault of John Doe defendants is proper for a number of reasons: 1) it prevents plaintiffs from strategically delaying their UM claim until after the lawsuit; 2) it allocates fault based on the actual negligence of the various drivers; and 3) it avoids double recovery by plaintiffs.
We granted plaintiff's petition for certification. 229 N.J. 622, 164 A.3d 412 (2017). We also granted amicus curiae status to the New Jersey Association for Justice (NJAJ).
II.
A.
Plaintiff argues that a jury should not be permitted to apportion fault between a named party defendant and an unidentified party who is not represented by counsel. In plaintiff's view, John Doe is not a "true party" to the case under the CNA, and placing John Doe on the jury verdict sheet and allowing fault allocation to John Doe results in a miscarriage of justice.
Plaintiff asserts that the cases relied upon by the Appellate Division are inapposite because they involved named defendants who were dismissed before jury deliberations. Here, plaintiff **532 argues that John Doe's identity was never ascertained and so he never actually became a party to the lawsuit.
Plaintiff raises three additional arguments. First, he argues that allowing fault allocation to John Doe improperly allows identified defendants to present an "empty chair defense"[2] by blaming unidentified John Doe defendants. Therefore, according to plaintiff, if this Court allows allocation to John Doe defendants, it should require UM carriers to present a defense on behalf of the John Doe defendant. Second, plaintiff asserts that if this Court allows allocation, it should require identified defendants to advise the court and opposing counsel that they will assert John Doe's negligence. Finally, plaintiff claims that allowing allocation to John Doe in this case creates a slippery slope by permitting defendants to assert the negligence of entities outside the litigation.
B.
Defendant argues that it was proper to allocate fault to John Doe because the legislative purpose of the CNA is to promote the fair sharing of the burden of a judgment. In defendant's view, it is the joint tortfeasor status, not the party status, that determines whether allocation is appropriate, and each tortfeasor should pay damages in accordance with the percentage of fault attributed to it by the fact-finder. Thus, according to defendant, because the complaint alleged that he and John Doe were joint tortfeasors, it was proper for the jury to allocate fault both to him and to John Doe. Defendant further stresses that plaintiff should not have been surprised that John Doe was listed on the verdict sheet, given that plaintiff elected to name John Doe as a defendant in the complaint.
Defendant adds that there is no "rule prohibiting the allocation of fault to fictitious parties" and that **533 Bencivenga v. J.J.A.M.M., Inc., 258 N.J. Super. 399, 609 A.2d 1299 (App. Div. 1992), from which that proposition stems, is inapposite. Finally, defendant argues that joinder should not be mandatory because UM carriers already receive notice of litigation and have the option to intervene. Therefore, in *986 defendant's view, there is no reason to force carriers to participate in litigation where they would not do so of their own volition.
C.
The NJAJ argues that the Appellate Division conflated the concept of fictitious parties with the concept of phantom vehicles[3] for which there is mandatory insurance coverage in all motor vehicle policies issued in New Jersey. It asks that this Court "clarify and reaffirm" the "long-standing rule barring the jury's assessment of a fictitious party's negligence and the placement of a fictitious party on the verdict sheet." The NJAJ also argues that this Court should adopt a bright-line rule "requiring the joinder of a plaintiff's UM carrier in motor vehicle cases where there is a known and identified defendant driver and a phantom vehicle."
The NJAJ notes that John Doe was never identified during discovery, substituted in as a party to the litigation, or served with process, and stresses that plaintiff's UM insurance carrier never intervened in the case or presented a defense on behalf of John Doe, even though the UM claim was unresolved and the carrier had notice of the litigation. The NJAJ argues that the Appellate Division's decision therefore violates the rule set forth in Bencivenga-that John Doe defendants are not parties for the purpose of fault allocation under the CNA. In the NJAJ's view, the panel **534 improperly established a "blanket" "empty chair" defense available whenever plaintiff names fictitious defendants in a complaint.
III.
A.
"The [CNA] and the Joint Tortfeasors Contribution Law [ (JTCL), N.J.S.A. 2A:53A-1 to -5,] comprise the statutory framework for the allocation of fault when multiple parties are alleged to have contributed to the plaintiff's harm." Town of Kearny v. Brandt, 214 N.J. 76, 96, 67 A.3d 601 (2013). Under New Jersey law, "joint tortfeasors" are "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." N.J.S.A. 2A:53A-1. "The [JTCL] was enacted to promote the fair sharing of the burden of judgment by joint tortfeasors and to prevent a plaintiff from arbitrarily selecting his or her victim." Holloway v. State, 125 N.J. 386, 400-01, 593 A.2d 716 (1991).
The allocation of damages among joint tortfeasors is prescribed by the CNA. The CNA provides that, when multiple defendants have been found liable, the trier of fact shall determine "[t]he extent, in the form of a percentage, of each party's negligence or fault.[4] The percentage of *987 negligence or fault of each party shall be based on 100% and the total of all percentages of negligence or fault of all of the parties to a suit shall be 100%." N.J.S.A. 2A:15-5.2(a)(2). A plaintiff ordinarily can recover only the percentage of damages attributed to a particular defendant. **535 N.J.S.A. 2A:15-5.3(c). However, if a defendant is found to be sixty percent or more at fault, the plaintiff can recover the full amount of damages from that one defendant, N.J.S.A. 2A:15-5.3(a), and that defendant may in turn "recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share." N.J.S.A. 2A:53A-3.
"The [CNA] was designed to further the principle that '[i]t is only fair that each person only pay for injuries he or she proximately caused.' " Jones v. Morey's Pier, Inc., 230 N.J. 142, 159, 165 A.3d 769 (2017) (second alteration in original) (quoting Fernandes v. DAR Dev. Corp., 222 N.J. 390, 407, 119 A.3d 878 (2015) ). "The law favors apportionment even where the apportionment proofs are imprecise, allowing only for rough apportionment by the trier of fact." Boryszewski v. Burke, 380 N.J. Super. 361, 384, 882 A.2d 410 (App. Div. 2005).
Moreover, the CNA requires the "jury to make a good-faith allocation of the percentages of negligence among joint tortfeasors based on the evidence-not based on the collectability or non-collectability" of the tortfeasors' respective shares of the damages. Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 121, 853 A.2d 940 (2004) ; see also Brandt, 214 N.J. at 103, 67 A.3d 601 ("[A]pportionment of fault under the [CNA] and the [JTCL] does not turn on whether the plaintiff is in a position to recover damages from the defendant at issue.").
That principle applies not only to defendants without the assets necessary to satisfy any judgment against them, but also to defendants who are at fault but would not be required to satisfy judgments for other reasons. For example, fault can be allocated to those defendants who have reached independent settlements with a plaintiff and thus will not have to pay further even if a greater payment would be required based on eventual allocation of fault. See, e.g., Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548, 569, 410 A.2d 674 (1980). But allocation to settling defendants is contingent on the plaintiff's receipt of "fair and timely notice" that the remaining defendants will argue that liability should be attributed **536 to those defendants who have settled. Young v. Latta, 123 N.J. 584, 597, 589 A.2d 1020 (1991) ; see also Higgins v. Owens-Corning Fiberglas Corp., 282 N.J. Super. 600, 609, 615, 660 A.2d 1252 (App. Div. 1995) (remanding for new trial because trial judge granted defendant's motion and included on jury verdict sheet additional asbestos manufacturer never named as defendant that settled with plaintiff).
In Morey's Pier, for example, we allowed the allocation of fault to a public entity defendant who had been dismissed because the plaintiff had failed to serve it with a timely notice of claim as required by the Tort Claims Act after noting that the "parties ha[d] long been on notice of the ... defendants' intention to seek the apportionment of a percentage of fault." 230 N.J. at 165, 165 A.3d 769 ; see also Brodsky, 181 N.J. at 108, 853 A.2d 940 (allowing allocation of fault to defendant dismissed from litigation pursuant to discharge in bankruptcy); Burt v. W. Jersey Health Sys., 339 N.J. Super. 296, 305, 771 A.2d 683 (App. Div. 2001) (holding that doctor dismissed from malpractice litigation due to plaintiff's failure to properly file affidavit of merit was still fault-allocable party under CNA).
*988 By contrast, when a named defendant is found to be immune from liability-as opposed to at fault but invulnerable to recovery because a defendant is either unable to satisfy or excused from satisfying an adverse judgment-then fault may not be allocated to that defendant. The Appellate Division explained that distinction in Ramos v. Browning Ferris Industries of South Jersey, Inc., 194 N.J. Super. 96, 101, 105, 476 A.2d 304 (App. Div. 1984), rev'd on other grounds, 103 N.J. 177, 510 A.2d 1152 (1986). In Ramos, a worker was injured on the job while wheeling a 400-pound drum of solid waste. 194 N.J. Super. at 100, 476 A.2d 304. The jury attributed twenty-five percent of the negligence to the worker and seventy-five percent to defendant Browning Ferris, "a solid waste hauler that leased the container to plaintiff's employer." Ibid. The Appellate Division considered Browning Ferris's argument that the employer's negligence should have been considered in assessing **537 the cause of the worker's injuries, even though the employer was immune from suit under a provision of the New Jersey Workers' Compensation Act, N.J.S.A. 34:15-8. Id. at 102-03, 476 A.2d 304.
The appellate panel properly held that "our Legislature expressed its intent to limit the task of the trier of fact to determining the percentages of negligence of only those persons, necessarily parties, whose percentages must be known in order to mold the judgment." Id. at 107, 476 A.2d 304. Thus, because the employer's immunity meant it could not be a joint tortfeasor as a matter of law or a party to the litigation, it was properly exempt from the allocation of fault. Ibid.
In sum, the CNA requires the allocation of fault to defendants who may be responsible for the injury without regard to whether those defendants are, for other reasons, invulnerable to recovery by the plaintiff. This case poses the question of how those principles apply when a defendant is a known but unidentified "John Doe" defendant. To answer that question, we review the law of fictitious parties.
B.
In New Jersey, a plaintiff may sue a person or entity as "John Doe" if the plaintiff knows a cause of action exists against the defendant but does not know the defendant's identity. See Greczyn v. Colgate-Palmolive, 183 N.J. 5, 11, 869 A.2d 866 (2005). Our court rules provide that "if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification." R. 4:26-4. The rules also direct the plaintiff to "amend the complaint to state defendant's true name" at a time "prior to judgment." Ibid.
Amendment under Rule 4:26-4 is a prerequisite to recovery: "[n]o final judgment shall be entered against a person designated by a fictitious name." Indeed, the fictitious name rule acts to "suspend the running of the statute of limitations until the actual **538 identity of a defendant is discovered." Lawrence v. Bauer Publ'g & Printing Ltd., 78 N.J. 371, 375-76, 396 A.2d 569 (1979).
Sometimes, it may be impossible to learn the identity of a fault-bearing defendant. This is a frequent problem, for example, in hit-and-run accidents. To protect those injured in motor vehicle accidents caused by known but unidentified drivers, New Jersey has required that automobile insurance policies include a UM provision since 1968. N.J.S.A. 17:28-1.1 ; Riccio v. Prudential Prop. & Cas. Ins. Co., 108 N.J. 493, 499, 531 A.2d 717 (1987). UM provisions insure drivers against "damages from the operator of an uninsured motor *989 vehicle, or hit and run motor vehicle." Riccio, 108 N.J. at 499, 531 A.2d 717. "[T]o collect under UM coverage, the claimant-insured must be able to prove an automobile liability case against the uninsured." Ibid. Under that scheme, accident victims can recover through their own UM carrier-up to the policy limits-for the damages caused by a "phantom vehicle," or a known, fault-bearing driver who cannot be identified. In other words, the UM coverage scheme anticipates and provides for judgment to be entered in favor of plaintiffs when the tortfeasor is a known but unidentified motorist.
We next consider cases that have harmonized the foregoing principles applicable to fictitious parties, particularly in the UM context, with the allocation of fault among tortfeasors pursuant to the JTCL and the CNA.
C.
In Riccio, this Court considered the damages recoverable by a plaintiff whose daughter was killed when the car in which she was a passenger was forced off the road by an unidentified vehicle. Id. at 495-97, 531 A.2d 717. We affirmed a judgment in which fifty percent of the fault for the accident had been allocated to the known but unidentified driver. See id. at 496-97, 531 A.2d 717 (after successful Demand for Arbitration,[5] "the arbitrator determined **539 that the drivers-[the driver of the vehicle in which the plaintiff's daughter was a passenger] and the 'phantom' uninsured-shared responsibility for the accident on an equal basis"). Although allocation of fault was not the central question in Riccio, the result in that case suggests that known but unidentified defendants who are not immune from liability may be allocated fault alongside the known defendants in the case.
The Appellate Division held as much in Cockerline v. Menendez, 411 N.J. Super. 596, 988 A.2d 575 (App. Div. 2010). In Cockerline, the plaintiff brought a wrongful death suit against the drivers involved in a multi-vehicle accident that killed her husband. Id. at 605, 988 A.2d 575. A number of those drivers were identified, but other drivers involved in the accident, who left the scene and were never identified, appeared in the complaint as John Doe defendants. Id. at 610, 988 A.2d 575. The plaintiff also initiated a UM claim with her insurance carrier for the damages caused by the John Doe drivers. Ibid. The UM carrier intervened in the lawsuit and then settled with the plaintiff. Ibid.
The panel noted the "different goals and purposes" served by the law that governs UM coverage and the JTCL and CNA: the former aims " 'to make the victim whole, but not provide a windfall or to allow a double recovery' "; the latter laws are designed " 'to relieve tortfeasors of an injustice among themselves.' " Id. at 619, 988 A.2d 575 (quoting Riccio, 108 N.J. at 504, 531 A.2d 717 ).
In accordance with those distinct policy aims, the Appellate Division panel allowed the allocation of fault to the John Doe drivers. Ibid. The panel concluded that "to preclude defendants from seeking an apportionment of liability against the phantom vehicles does not advance the purposes of the UM law and frustrates the purposes of the joint tortfeasor and comparative fault law." Ibid.
From Riccio and Cockerline we derive the principle that parties known to be at least in part liable should be allocated their share of the fault, even when unidentified. In such cases, known **540 but unidentified parties may be allocated fault *990 even though recovery against those parties will be possible only through the plaintiff's UM coverage.
An exception to that general rule can be found in the case on which plaintiff relies here- Bencivenga. In that case, a nightclub patron sued the club after he was punched in the face by a fellow patron, whose identity he did not know. 258 N.J. Super. at 402, 609 A.2d 1299. The complaint named the assailant as a John Doe defendant. Ibid. The trial court, however, refused to allow the jury to consider the John Doe defendant's negligence. Ibid.
On appeal, the nightclub argued that the trial court should have allowed the jury to apportion fault between the nightclub and the John Doe assailant. Id. at 406, 609 A.2d 1299. The Appellate Division relied on a policy justification to affirm the trial court-that the nightclub was more likely than the plaintiff to know the assailant's identity.[6] Id. at 410, 609 A.2d 1299. The panel reasoned that by keeping the John Doe assailant off the verdict sheet, the trial court forced the nightclub to either identify him and mitigate its share of the fault, or decline to name him and bear the cost of his share. Ibid. According to the Appellate Division, that would create an incentive for the identified defendant to name John Doe tortfeasors so that they can, in turn, share in the allocation of fault, reducing the identified defendant's exposure. Ibid.
We turn now to the facts of this case and review de novo the legal question of whether fault was properly allocated to the known but unidentified **541 John Doe defendant under the JTCL and the CNA. SeeBrandt, 214 N.J. at 96, 67 A.3d 601 (citing Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584, 46 A.3d 1262 (2012) ; Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) ).
IV.
Although there were only two defendants here-the identified defendant and the John Doe defendant-this case strongly resembles Cockerline. In that case, the drivers of the "phantom vehicles" were never identified, but they were known inasmuch as their roles in that accident were acknowledged. Therefore, just as fault could be allocated to the John Does in that case, fault was properly allocated to John Doe here.
Plaintiff describes John Doe in this case as a "fictitious" person "who was not named and could never be named" and can never be a "true party under [the CNA]." We disagree. To begin with, John Doe here is a known but unidentified party. Indeed, plaintiff and defendant acknowledge the role that John Doe played in causing the accident-he improperly made a left turn, cutting off the line of cars in plaintiff's lane of travel.
It is true that John Doe "is not someone against whom recovery can be sought because the fictitious person rule, R. 4:26-4, and due process prevents entry of judgment against a person designated by a fictitious name." Bencivenga, 258 N.J. Super. at 406-07, 609 A.2d 1299. However, *991 John Doe in this case is not a "fictitious person" in the sense that his existence and involvement in the accident are not subject to dispute. Rather, John Doe was the operator of a motor vehicle involved in plaintiff's accident, who cannot be identified. By requiring that automobile insurance policies include a UM provision, the Legislature has acknowledged and prepared for precisely such circumstances. See N.J.S.A. 17:28-1.1. Stated simply, "phantom vehicles" driven by known but unidentified motorists that play a part in an accident presumptively may be allocated fault in accordance with the JTCL, the CNA, and the laws requiring UM coverage. **542 We agree that the presumptive ability to allocate fault to such defendants may be defeated if the identified defendants do not provide "fair and timely" notice of their intent to argue that fault should be allocated to the John Doe defendant. Young, 123 N.J. at 596, 589 A.2d 1020. However, here, it is undisputed that plaintiff received "fair and timely" notice defendant would assert that John Doe was the cause of the accident. Indeed, defendant's third-party negligence defense was set forth in his answer to the complaint. Plaintiff's UM carrier, moreover, received notice of the litigation, offered the policy limits in settlement of the UM claim, and had the option to intervene.
Additionally, the other grounds upon which allocation has been denied in other cases do not apply here. In contrast to the employer in Ramos, there is no statutory bar to finding John Doe liable. Unlike the asbestos manufacturer added to the verdict sheet in Higgins, John Doe was properly joined as a party in this case. Finally, unlike the club owner in Bencivenga, defendant in this case was not more likely than plaintiff to know John Doe's identity.
We agree with defendant that, under the circumstances of this case and in light of the undisputed evidence that John Doe's negligence contributed to the accident, the trial court appropriately submitted the question of John Doe's negligence to the jury for fault allocation.
For completeness, we add that John Doe's party status under the CNA's fault-allocation provision does not mean that the UM carrier who will ultimately cover any damages attributed to John Doe must intervene in the case and formally become a party to the negligence suit. Here, plaintiff's UM carrier received notice of the litigation and had the option to intervene and participate at trial in an effort to limit its exposure. Because it is plaintiff's UM carrier that is responsible for the damages caused by John Doe, there is no reason to require its participation in this litigation where it chose not to do so.
**543 Indeed, our courts recognize that under some circumstances "a defendant is allowed to prove that a non-party was the sole proximate cause of the plaintiff's harm-the so-called 'empty chair' defense in which a defendant shifts blame to a joint tortfeasor who is not in the courtroom." Brodsky, 181 N.J. at 114, 853 A.2d 940. To the extent that plaintiff and amicus claim that the "empty chair" defense is being permitted here, this is such a circumstance.
In sum, plaintiff and defendant both asserted the existence of a "phantom vehicle." Plaintiff and plaintiff's UM carrier received necessary notice that defendant would assert John Doe's responsibility for the accident. Cf. R. 4:7-5. Therefore, the CNA mandates the allocation of fault to John Doe, a party to this action.
V.
For the reasons set forth above, the judgment of the Appellate Division is affirmed.
*992 CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, and TIMPONE join in JUSTICE SOLOMON's opinion.
JUSTICE FERNANDEZ-VINA did not participate.

The complaint names three John Doe defendants. John Doe I is described as the driver of the car that made the improper left turn; John Doe II is described as the owner of that car; and John Doe III is described as the individual or entity on whose behalf that car was being driven. The action was litigated only against defendant and John Doe I.

"The practical effect of a defendant proving that the 'empty chair' was responsible for the accident is that the plaintiff will receive no recovery." Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 114, 853 A.2d 940 (2004).

"Phantom vehicle" is a term used for vehicles that were known to be involved in an automobile accident but never sufficiently identified as to permit the owner or operator to be hauled into court. See Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 598-99, 609, 110 A.3d 19 (2015) (describing the unidentified vehicle that caused an accident as a "phantom vehicle"); Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 374, 389, 997 A.2d 954 (2010) (same).

The CNA also provides that a plaintiff cannot recover damages if his or her negligence was "greater than the negligence of the person against whom recovery is sought or ... greater than the combined negligence of the persons against whom recovery is sought." N.J.S.A. 2A:15-5.1. "In other words, a plaintiff who is found to be more than fifty percent at fault is entitled to no recovery," whereas "[a] plaintiff who is found to be fifty percent or less at fault is entitled to a recovery, but any award of damages is diminished by the percentage of negligence attributed to her." Brodsky, 181 N.J. at 109, 853 A.2d 940.

A Demand for Arbitration can be filed, in lieu of a lawsuit, under the UM provisions of an insurance contract. See Riccio, 108 N.J. at 496, 531 A.2d 717.

To the extent that the holding in Bencivenga also rested on the panel's determination that fault could not be allocated to the John Doe defendant because "a fictitious person is not a party to a suit," 258 N.J. Super. at 407, 609 A.2d 1299, we note that a John Doe defendant's unavailability for final judgment under the law of fictitious persons affects the ability to recover damages, but does not affect that defendant's status as a party for purposes of fault allocation. Indeed, in the context of this case, it is necessary that fault be allocated to such known but unidentified defendants because of the existence of UM insurance coverage.