NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1999-19

JOSE CARBAJAL,

     Plaintiff-Appellant/
     Cross-Respondent,

v.

NANCY V. PATEL and
GHANSHYAM B. PATEL

     Defendant-Respondents/
     Cross-Appellants,

and

GEORGE BENJAMIN and
STATE FARM INSURANCE
COMPANY,

     Defendants-Respondents,

and

NANCY V. PATEL and
GHANSHYAM PATEL,

     Third-Party Plaintiffs,

v.

GEICO INDEMNITY COMPANY,

     Third-Party Defendant/

> **APPROVED FOR PUBLICATION**
>
> **June 2, 2021**
>
> **APPELLATE DIVISION**

Respondent.

_____

Argued April 26, 2021 – Decided June 2, 2021

Before Judges Fasciale, Mayer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-4317-17.

John D. Gagnon argued the cause for appellant/cross-respondent (Rabb Hamill, P.A., attorneys; Edward K. Hamill, of counsel and on the briefs).

John A. Camassa argued the cause for respondent/cross-appellant (Camassa Law Firm, PC, attorneys; Alexandra J. Taylor, on the brief).

John J. Kapp argued the cause for respondent State Farm Insurance Company (Gregory P. Helfrich & Associates, attorneys; John J. Kapp, on the brief).

The opinion of the court was delivered by

FASCIALE, P.J.A.D.

This third-party automobile negligence appeal requires us to determine whether defendant Nancy Patel's inability to obtain contribution under the Joint Tortfeasors Contribution Law (JTCL), N.J.S.A. 2A:53A-1 to -5, from plaintiff's uninsured motorist (UM) insurance carrier, precludes plaintiff's right under the Comparative Negligence Act (CNA), N.J.S.A. 2A:15-5.1 to -5.8, to full recovery of the $200,000 verdict from Patel.

The jury found two joint tortfeasors responsible for the accident: Patel (sixty percent) and the driver of a phantom vehicle (forty percent).[1] Under the CNA, a plaintiff is entitled to full recovery of damages from a defendant found at least sixty percent at fault. Meanwhile, under the JTCL, that defendant may then seek contribution for the amount paid in excess of his or her pro rata share from any other joint tortfeasor also found at fault. Patel recognizes she cannot obtain contribution directly from the driver of the phantom vehicle because it is a fictitious party named solely to apportion fault. But through no fault of plaintiff, who responsibly obtained UM coverage to protect his interests in a case like this, neither can Patel obtain full contribution directly from plaintiff's UM carrier.

Here, the judge entered judgment by molding the verdict in Patel's favor. He required Patel to pay $120,000 (sixty percent), plus costs and prejudgment interest on that amount,[2] and ordered the UM carrier to pay plaintiff $15,000, the UM policy limit. Doing so shortchanged plaintiff $65,000, the balance of the jury's $200,000 verdict.

_____

[1] Plaintiff named a third driver, George Benjamin, as a defendant, but as to Benjamin, the jury returned a verdict of no cause of action. Benjamin is not involved in this appeal.

[2] Patel filed a third-party complaint against her liability carrier, GEICO, but that insurance coverage matter settled. GEICO is not involved in this appeal.

A-1999-19

Plaintiff appeals, urging us to reverse, remand, and direct the judge to enter judgment awarding him full recovery. Patel cross-appeals from the same judgment, arguing the judge erred by allowing plaintiff to reopen his case after he rested, and by reserving decision on her motion for a directed verdict until the following morning.

We hold that Patel's inability to obtain contribution from the UM carrier does not preclude plaintiff's full recovery under N.J.S.A. 2A:15-5.3(a) of the CNA, where the plain text makes clear that a defendant found more than sixty percent at fault is liable for the full award. From a practical standpoint, plaintiff's UM carrier, which we emphasize was not a joint tortfeasor in plaintiff's third-party negligence action, will pay plaintiff $15,000. This payment, which Patel will receive as an offset, forecloses a potential double recovery to plaintiff and comports with the UM scheme. Contrary to Patel's assertion, however, she cannot obtain contribution from the UM carrier for the amount above her pro rata share.

On the appeal, we reverse, remand, and direct the judge to enter judgment and mold the verdict in accordance with this opinion. On the cross-appeal, we affirm.

4

I.

Plaintiff, Patel, and Benjamin were traveling on the northbound side of the Garden State Parkway in separate vehicles when Patel swerved into Benjamin's lane, causing Benjamin to collide with plaintiff. Plaintiff sued Benjamin and Patel, alleging their negligence proximately caused his injuries. Patel then attributed fault to the phantom vehicle, which she alleged swerved into her lane, forcing her to swerve into Benjamin's lane. Plaintiff amended his complaint, added allegations against the phantom vehicle, and filed a first-party claim against his UM carrier to protect his interests in the event the jury found the phantom vehicle contributed to the accident. Plaintiff's negligence action against Patel, Benjamin, and the driver of the phantom vehicle then proceeded to trial.[3]

After the verdict, in accordance with Rule 4:42-1(c) and relying on N.J.S.A. 2A:15-5.3(a), plaintiff's counsel submitted a proposed order for full recovery against Patel because the jury found her sixty percent at fault. The next day, Patel's counsel filed and served a one-page letter notifying counsel

_____

[3] Plaintiff's first-party claim against his UM carrier became moot once the UM carrier agreed to pay the $15,000 UM limit after the jury apportioned fault against the phantom vehicle. The UM carrier takes no position relative to the JTCL and CNA, other than to say, under UM law, it cannot pay more than plaintiff's UM liability limits.

and the judge that he would be "submitting . . . opposition with further legal analysis." Approximately three weeks later, without waiting for Patel's submission or allowing responses, the judge entered the order of judgment under review.[4]

In this appeal, we now know what Patel's counsel would have argued to the judge: either order Patel to pay only $120,000 (sixty percent); or, if she must fully compensate plaintiff under N.J.S.A. 2A:15-5.3(a), then order the non-joint tortfeasor UM carrier to reimburse her $80,000, which is $65,000 over plaintiff's UM policy limit. The final judgment entered by the judge of $135,000 plus costs and limited prejudgment interest is for substantially less than the jury's $200,000 verdict.

---

[4] Rule 4:42-1(c)—generally known as the five-day rule—permits the judge to list the matter for hearing if opposition is filed to the proposed form of order. Knowing that Patel's counsel planned to submit formal opposition, the judge nevertheless rejected plaintiff's proposed order and entered his own order without conducting a hearing or rendering conclusions of law. The dispute over the order was not insignificant. It raised substantial legal issues requiring analysis of the JTCL, the CNA, and our UM law. We understand Rule 1:7-4(a) applies to motions, and that an order under the five-day rule is not a motion. But, in a case such as this, developing a full record and making legal conclusions were respectfully warranted. We will, however, analyze the legal questions on appeal de novo, Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995), without directing the judge to do so in the first instance.

On the appeal, plaintiff argues:

POINT I

THE TRIAL [JUDGE] ERRED IN FAILING TO
ENTER JUDGMENT IN THE FULL AMOUNT OF
DAMAGES AWARDED BY THE JURY AGAINST
. . . PATEL . . . WHO WAS FOUND TO BE SIXTY
PERCENT . . . RESPONSIBLE FOR THE TOTAL
DAMAGES IN ACCORDANCE WITH N.J.S.A.
2A:15-5.3(a).

POINT II

THE TRIAL [JUDGE] ERRED IN FAILING TO
AWARD COSTS AND PRE[]JUDGMENT
INTEREST ON FORTY PERCENT . . . OF THE
JURY'S DAMAGE AWARD.[5]

On the cross-appeal, Patel argues:

POINT I

THE TRIAL [JUDGE] PROPERLY REJECTED . . .
PLAINTIFF'S REQUEST FOR JOINT AND
SEVERAL LIABILITY.[6]

---

[5]  On remand, we direct the judge to award plaintiff appropriate costs and
prejudgment interest after the parties have had an opportunity to fully brief all
related relevant issues.

[6]  On this point, Patel argues that the judge properly molded the verdict in
accordance with Taddei v. State Farm Indem. Co., 401 N.J. Super. 449 (App.
Div. 2008).  The judge correctly molded the verdict requiring the UM carrier
to pay its $15,000.  But doing so does not preclude plaintiff's right to full
recovery from Patel for Patel's sixty percent apportionment of fault.

A-1999-19

<u>POINT II</u>

THE TRIAL [JUDGE] INCORRECTLY DENIED [PATEL'S] MOTION FOR INVOLUNTARY DISMISSAL.

II.

We begin by generally summarizing the governing law, highlighting the plain language of the statutes, and analyzing caselaw. Undertaking this summary and analysis informs our holding, which facilitates reconciliation of the JTCL and CNA without disrupting the allocation scheme.

Our standard of review is well settled. "In matters of statutory interpretation, our review is de novo." <u>Verry v. Franklin Fire Dist. No. 1</u>, 230 N.J. 285, 294 (2017) (citing <u>Saccone v. Bd. of Trs. of Police & Fireman's Ret. Sys.</u>, 230 N.J. 285, 294 (2017)). "The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." <u>DiProspero v. Penn</u>, 183 N.J. 477, 492 (2005). We "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." <u>Ibid.</u> (citations omitted). "[I]f there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'" <u>Id.</u> at 492-93 (quoting <u>Cherry</u>

Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)). Additionally, when more than one statute deals with the same subject—like here—we interpret them together "in pari materia . . . as a unitary and harmonious whole." Jones v. Morey's Pier, Inc., 230 N.J. 142, 164 (2017) (quoting St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 14-15 (2005)).

A.

"Tort law has two goals. One is to make an injured [party] whole, and the other is to deter." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 455 (1993) (Garibaldi, J., dissenting) (citing Prosser and Keeton on Torts § 4 (5th Ed. 1984)); see Robert E. Keeton, Is There a Place for Negligence in Modern Tort Law?, 53 Va. L. Rev. 886, 886 (1967) (noting that "[t]he primary objective of Anglo-American tort law is fair and just compensation for losses"). New Jersey's general tort law policy mandates "that wronged persons should be compensated for their injuries and . . . those responsible for the wrong should bear the cost of their tortious conduct." People Express Airlines, Inc. v. Consol. Rail Corp., 100 N.J. 246, 255 (1985); see also Caldwell v. Haynes, 136 N.J. 422, 433 (1994) (explaining that "[t]he principal goal of damages in personal-injury actions is to compensate fairly the injured party"). This principle underscores all actions sounding in tort, including those where multiple defendants may be jointly liable for a plaintiff's injuries.

9

In multi-defendant actions, the common law permitted a plaintiff to select from which defendant they would recover the entirety of their judgment. Our Court in Tino v. Stout, 49 N.J. 289, 298 n.3 (1967), noted that that practice left the singled-out defendant "helpless to shift any of the responsibility to any other joint defendants." This approach "did violence to basic equitable notions that those whose fault caused the injury should, in good conscience, bear their just shares of the burden." Young v. Latta, 123 N.J. 584, 589 (1991) (quoting Kennedy v. Camp, 14 N.J. 390, 400 (1954) (Jacobs, J., concurring)). Our Legislature addressed this problem by enacting the JTCL, which created a substantive right of contribution among joint tortfeasors when one joint tortfeasor paid more than its pro rata share of the judgment, see Sattelberger v. Telep, 14 N.J. 353, 365-67 (1954), allowing them to "relieve . . . an injustice among themselves," Cockerline v. Menendez, 411 N.J. Super. 596, 619 (App. Div. 2010) (quoting Riccio v. Prudential Prop. & Cas. Ins. Co., 108 N.J. 493, 504 (1987)). Importantly, however, the JTCL did not restrict the fundamental goal of ensuring that injured plaintiffs are fully compensated. Tino, 49 N.J. at 298 n.3 (noting that the JTCL "was not designed to prevent a full recovery by the plaintiff[,] nor was it intended to deny a plaintiff full and complete satisfaction of his [or her] claim").

A-1999-19

The JTCL provides that

> [w]here injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, . . . , and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share.
>
> [N.J.S.A. 2A:53A-3.]

The plain language of the JTCL demonstrates the Legislature's intent to provide defendants who pay above their pro rata share a right to contribution without affecting an injured party's right to full recovery.

In 1973, the Legislature enacted the CNA, which complements the JTCL, and which altered the manner of apportioning liability among joint tortfeasors. At that time, the CNA replaced the existing law with a system in which the jury evaluates the relative degrees of fault of the parties involved in a case. N.J.S.A. 2A:15-5.2(a)(2). Moreover, any finding of contributory negligence would no longer bar a plaintiff's recovery unless the plaintiff's percentage of fault was more than fifty percent. See Model Jury Charges (Civil), 7.10, "Contributory Negligence" (approved May 1991); Model Jury Charges (Civil), 7.31, "Comparative Negligence/Fault: Ultimate Outcome" (rev. Sept. 2018); see also Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 109

A-1999-19

(2004) (noting that "a plaintiff who is found to be more than fifty percent at fault is entitled to no recovery").

Under the CNA, consistent with the fundamental common-law purpose of ensuring a plaintiff's full recovery, the Legislature provided that an injured party "may recover . . . [t]he full amount of the damages from any party determined by the trier of fact to be [sixty percent] or more responsible for the total damages." N.J.S.A. 2A:15-5.3(a). This threshold is clear and unambiguous from the plain text of the CNA. See S. Judiciary Comm. Statement to S. 2703, at 1 (Oct. 30, 1986) (noting that the bill "modifie[d] 'joint and several liability'" to hold only defendants who are apportioned sixty percent or more responsible for the total amount of damages). As to a defendant's right to contribution, and in conjunction with the JTCL, the CNA explicitly provides that "[a]ny party who is compelled to pay more than his [or her] percentage share may seek contribution from the other joint tortfeasors." N.J.S.A. 2A:15-5.3(e).

The Legislature has never limited full recovery of a plaintiff who has been harmed by a defendant found sixty percent at fault. In 1995, the Legislature altered a recovering party's right to recovery under N.J.S.A. 2A:15-5.3 in certain circumstances that do not apply here, particularly as to

environmental tort actions. See N.J.S.A. 2A:15-5.3(d).[7] But it never limited a plaintiff's right to full recovery in a case like this.

Thus, the CNA and the JTCL, applied together, "ameliorate[d] the harshness of the common-law contributory negligence bar to recovery" while simultaneously "provid[ing] that ordinarily each tortfeasor will respond in damages according to its own adjudicated percentage of fault." Burt v. W. Jersey Health Sys., 339 N.J. Super. 296, 304 (App. Div. 2001). As we previously noted, we read these statutes "in pari materia . . . as a unitary and harmonious whole," as they deal with the same subject. Jones, 230 N.J. at 164 (quoting St. Peter's Univ. Hosp., 185 N.J. at 14-15). In doing so, we recognize that a guiding principle of comparative fault is "to distribute the loss in proportion to the respective faults of the parties causing that loss," Blazovic v. Andrich, 124 N.J. 90, 107 (1991), and that our comparative fault scheme implements a "fair apportionment of damages among plaintiff and defendants,

---

[7] The language of subsection (d) preserves joint and several liability in an environmental tort action in certain circumstances. See James v. Bessemer Processing Co., 155 N.J. 279, 312 (1998). If fault can be apportioned, then each defendant will be liable for its percentage share of the damage award, subject to adjustment for an insolvent, non-settling defendant's share. N.J.S.A. 2A:15-5.3(d)(2); see A. Ins. Comm. Statement to S. 1494, at 1 (June 1, 1995) (noting that the amendment would "preserve the environmental tort exception in those cases in which negligence or fault cannot be apportioned by the trier of fact among parties to the litigation, after the evidence has been presented with respect to each party's negligence or fault").

A-1999-19

and among joint defendants," Erny v. Estate of Merola, 171 N.J. 86, 99 (2002). Read together, the statutes were never meant to inhibit the fundamental tort-law objective of ensuring just compensation for wronged persons, which our State has recognized for decades, by limiting a plaintiff's right to full recovery of damages in a case like this.

B.

The goal and purpose of the UM law is different than that which underlies the JTCL and the CNA. Rather than "reliev[ing] tortfeasors of an injustice among themselves," Cockerline, 411 N.J. Super. at 619 (quoting Riccio, 108 N.J. at 504), the UM scheme is "designed to provide maximum remedial protection to the innocent victims of financially irresponsible motorists and to reduce the drain on the financially-troubled Unsatisfied Claim and Judgment Fund," ibid. (quoting Riccio, 108 N.J. at 503-04). And "its purpose 'is to make the victim whole, but not provide a windfall or to allow a double recovery.'" Ibid. (quoting Riccio, 108 N.J. at 504).

Our UM law is well-settled. "Sometimes, it may be impossible to learn the identity of a fault-bearing defendant." Krzykalski v. Tindall, 232 N.J. 525, 538 (2018). This is the case when a phantom vehicle contributes to or causes an accident. "To protect those injured in accidents caused by [phantom vehicles], New Jersey has required that automobile insurance policies include

14

a UM provision since 1968." Ibid. (citing N.J.S.A. 17:28-1.1). But "to collect under UM coverage, the claimant-insured must be able to prove an automobile liability case against the uninsured," here the phantom vehicle. Riccio, 108 N.J. at 499. Thus, the UM scheme "anticipates and provides for judgment to be entered in favor of plaintiffs when [a] tortfeasor is [the driver of a phantom vehicle]." Krzykalski, 232 N.J. at 538.

That is why—relying on the JTCL and the CNA—our courts have held that juries should be permitted to consider apportionment of fault to phantom vehicles who are at least partially liable, which then triggers UM coverage issues. See id. at 539-540 (stating that "parties known to be at least in part liable should be allocated their share of the fault, even when unidentified" and "recovery against those parties will be possible only through the plaintiff's UM coverage"); Cockerline, 411 N.J. Super. at 618-19 (holding that apportionment of fault to phantom vehicles is appropriate where plaintiff settled with her UM carrier based on the involvement of the phantom vehicle). Our Supreme Court previously stated that "[u]nder [the UM] scheme, accident victims can recover through their own UM carrier—up to the policy limits—for the damages caused by a 'phantom vehicle,' . . . [which] cannot be identified." Krzykalski, 232 N.J. at 538. In this context, we emphasize that the driver of the phantom vehicle, not plaintiff's UM carrier, is the joint tortfeasor. See Riccio, 108 N.J.

15

at 498-99 (explaining that UM coverage is for the benefit of the insured and the UM carrier neither "stand[s] in [the uninsured tortfeasor's] shoes" nor "owes him [or her any] duty" (quoting 8D Appleman on Insurance Law and Practice § 5071 at 81-83 (1981))).

## III.

And that brings us to the heart of this case: whether Patel's inability to recover $65,000 ($80,000 apportioned to the phantom vehicle minus the UM carrier's $15,000 payment) in contribution from the UM carrier under N.J.S.A. 2A:15-5.3(e) and N.J.S.A. 2A:53A-3 precludes plaintiff's right to recover the full amount of his verdict in accordance with N.J.S.A. 2A:15-5.3(a). Considering the plain text and policy goals of the JTCL, the CNA, and the UM scheme, we hold that plaintiff has the right to recover the full amount of the jury verdict from Patel, even though Patel cannot obtain full contribution from the UM carrier.

## A.

The overall intent of the Legislature is clear from the plain text of N.J.S.A. 2A:15-5.3(a): a plaintiff is entitled to full recovery from any joint tortfeasor found to be at least sixty percent liable. See DiProspero, 183 N.J. at 492. Under these facts, the statute entitles plaintiff to full recovery from Patel.

A-1999-19

Although we rely on the plain text of N.J.S.A. 2A:15-5.3(a), our conclusion is also supported by the statute's legislative history.

In amending the CNA in 1995 as to environmental tort cases, the Legislature did not alter the rights of parties to fully recover damages in other scenarios, like those that exist here. In that regard, "[t]he canon of statutory construction, expressio unius est exclusio alterius—expression of one thing suggests the exclusion of another left unmentioned—sheds some light on the interpretative analysis." Brodsky, 181 N.J. at 112. Indeed, the Legislature did not carve out an exception to a recovering party's right to receive the full amount of damages from a defendant found at least sixty percent liable when that defendant cannot directly obtain contribution from a UM carrier under N.J.S.A. 2A:53A-3 or N.J.S.A. 2A:15-5.3(e). It stands to reason that omission was deliberate. If the Legislature intended to exempt a circumstance like the one present from application of N.J.S.A. 2A:15-5.3(a), it would have done so.

Our Court has likewise made clear that a defendant's inability to obtain contribution does not categorically limit a plaintiff's full recovery. In Brodsky, the defendants alleged that another driver, who was uninsured, had negligently caused the accident that resulted in the plaintiffs' injuries. 181 N.J. at 107. The uninsured driver filed a bankruptcy petition and obtained an order discharging him from any debt arising from the car accident, which then led

17

the trial court to dismiss him from the plaintiffs' accident case. Ibid. Nonetheless, the Court held that the plaintiffs, who did not cause the accident, could pursue full recovery from the remaining defendants under N.J.S.A. 2A:15-5.3(a) if the trier of fact found those defendants at least sixty percent liable for the accident, despite the defendants' inability to obtain contribution from the uninsured driver. Id. at 116. Barriers to the defendants' ability to obtain contribution under N.J.S.A. 2A:15-5.3(e) and N.J.S.A. 2A:53A-3 did not impact the plaintiffs' right to full recovery under N.J.S.A. 2A:15-5.3(a). Id. at 116, 118. The plaintiffs did not cause the uninsured driver to drive without insurance or make him judgment proof. Thus, the Court's reconciliation of the statutes did not disrupt the allocation scheme.

Here, despite Patel's inability to obtain contribution, she is still responsible for the full verdict, in accordance with N.J.S.A. 2A:15-5.3(a), minus the $15,000 offset from the UM carrier, the maximum amount allowed under plaintiff's UM policy limit. Holding Patel fully responsible for the verdict award in this regard comports with the plain language of the JTCL and the CNA, is consistent with the legislative policies and purposes of both those statutes, and—in accordance with the UM scheme—forecloses plaintiff's ability to otherwise receive double recovery.

 A-1999-19

B.

Patel relies on <u>Jones</u> and <u>Burt</u> for the proposition that the judge correctly molded the verdict to reduce plaintiff's full recovery. But in <u>Jones</u> and <u>Burt</u>, unlike in <u>Brodsky</u>, those plaintiffs' own mistakes disrupted the allocation scheme. In <u>Jones</u>, the Court permitted a reduction of damages by the percentage of fault allocated to a public entity, acknowledging the plaintiff had failed to file a timely notice of tort claim under the Tort Claims Act (TCA). 230 N.J. at 170. And in <u>Burt</u>, we ruled that the plaintiff's recovery must be reduced by any fault attributed to the dismissed anesthesiologist defendants because the plaintiff had failed to obtain an affidavit of merit (AOM). 339 N.J. Super at 302-03, 308. We reached that conclusion even though the jury allocated sixty percent fault to the remaining defendants. <u>Id.</u> at 308. We reasoned that

> [t]o hold otherwise would deprive the [remaining] defendants of their right to seek contribution from the [anesthesiologist] defendants, even though the [remaining] defendants are found to be sixty percent or more responsible for the total damages. Again, the [remaining] defendants should not be prejudiced by the failure of plaintiff to file the required [AOM].
>
> [<u>Ibid.</u>]

The Court in <u>Jones</u> considered our analysis in <u>Burt</u> to correctly reconcile the governing statutes and avoid disrupting the allocation scheme. <u>Jones</u>, 230

19

N.J. at 169. By failing to serve a timely notice under the TCA in <u>Jones</u> or to serve an AOM in <u>Burt</u>, the plaintiffs in those cases disrupted the Legislature's clear objective "to fairly apportion liability for damages in accordance with the factfinder's allocation of fault" through their own actions. <u>Ibid.</u>

That did not happen here. Plaintiff's conduct did not prevent Patel from seeking contribution directly from the UM carrier in the third-party action. If anything, Patel benefitted from the UM carrier's payment, which offset her own responsibility. As we previously stated, once Patel alleged fault on the phantom vehicle's part, plaintiff brought in the UM carrier on her first-party contract claim in the event the jury found the phantom vehicle liable and the UM carrier failed to pay its limits. By placing the phantom vehicle on the verdict sheet, Patel attempted to spread fault, <u>see</u> N.J.S.A. 2A:15-5.3(c) (permitting a plaintiff to recover "[o]nly that percentage of the damages directly attributable to that party's negligence or fault from any party determined by the trier of fact to be less than [sixty percent] responsible for the total damages"), and in doing so, benefitted from the $15,000 offset against plaintiff's full recovery. Without suggesting to the jury that fault be attributed to the phantom vehicle, Patel would likely have been responsible for the full $200,000, rather than $185,000.

A-1999-19

## IV.

We next address Patel's contentions in her cross-appeal that it was reversible error for the judge, after plaintiff rested without sufficiently establishing liability, to permit plaintiff to reopen his case before denying her motion for a directed verdict; and that the judge's ruling violated Rule 4:37-2(b) because he reserved decision until the following day.

In reviewing a judge's denial of a motion for a directed verdict, we apply the same standard that governs the trial judge. ADS Assocs. Grp. v. Oritani Sav. Bank, 219 N.J. 496, 511 (2014). Motions for a directed verdict at the close of plaintiff's case-in-chief, R. 4:40-1, are governed by the same standard as motions for involuntary dismissal, pursuant to Rule 4:37-2(b). Alves v. Rosenberg, 400 N.J. Super. 553, 565 (App. Div. 2008). As applied here, we must accept as true all evidence presented by plaintiff and the legitimate inferences drawn therefrom to determine whether the proofs are sufficient to sustain a judgment in his favor. Monaco v. Hartz Mountain Corp., 178 N.J. 401, 413 (2004). "[T]he judicial function here is quite a mechanical one. The trial [judge] is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969).

A-1999-19

Under Rule 4:37-2(b), a trial judge will grant a motion for a directed verdict only if, accepting the non-moving party's facts and considering the applicable law, "no rational jury could draw from the evidence presented" that the non-moving party is entitled to relief. Pitts v. Newark Bd. of Educ., 337 N.J. Super. 331, 340 (App. Div. 2001); see also R. 4:37-2(b) (stating that "such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor"). "[I]f reasonable minds could differ as to whether any negligence has been shown, the motion should be denied." Bozza v. Vornado, Inc., 42 N.J. 355, 357-58 (1964) (citing Bell v. E. Beef Co., 42 N.J. 126, 129 (1964)). As to reserving decision on a motion for a directed verdict, our Supreme Court has indicated that "[n]othing in the Court Rules specifically prohibits a trial [judge] from reserving on a R[ule] 4:37-2(b) motion so long as the ultimate decision on such a motion is based only upon the plaintiff's evidence." Verdicchio v. Ricca, 179 N.J. 1, 30 n.4 (2004).

At trial, plaintiff testified that a vehicle hit his vehicle on the driver's side, but that he did not see it at any time before impact. Plaintiff presented no other evidence regarding how the accident occurred. In response to Patel's motion for a directed verdict, plaintiff's counsel requested permission to reopen his case to allow defense witnesses to testify or, alternatively, reserve

A-1999-19

decision until Patel could present such evidence. The judge addressed the possibility of allowing read-in testimony as well as the admissibility of such testimony before reserving decision. The following day, the judge acknowledged that plaintiff had not sufficiently explained the accident to the jury, specifically as it related to the phantom vehicle. The judge permitted plaintiff to reopen his case. In his oral decision the judge explained:

> [Y]ou're in a special situation . . . because you don't really have a live client. You have a phantom vehicle. So, therefore, that really precludes plaintiff in a lot of ways [from] getting his case on as to the phantom vehicle.
>
> . . . .
>
> . . . [Q]uite frankly . . . the happening of the accident has not been sufficiently explained to the jury. But what I am going to do is this, I'm going to allow the plaintiff to reopen and do a read-in. That read-in has got to establish the happening of this accident that satisfies your burden at this point in time.

Plaintiff's counsel then read into evidence Patel's deposition testimony that "an unknown vehicle suddenly came into [her] lane[,] forcing [her] to swerve to the right to avoid being struck. This caused [her] to strike the vehicle in the right lane. That vehicle, then, struck the plaintiff's vehicle. The unknown vehicle left the scene of the accident without stopping." Thereafter, the judge applied the correct standard and denied Patel's motion. Rule 4:37-

23

2(b) does not explicitly require that a motion for a directed verdict be immediately decided; reserving decision until the following morning was not improper.

We reject Patel's contention that the judge lacked authority to allow plaintiff to reopen his case. Trial judges have the authority to grant a plaintiff's application to reopen a case in response to a defendant's motion for a directed verdict. Handleman v. Cox, 74 N.J. Super. 316, 333 (App. Div. 1962) (explaining that "a case may be reopened to receive omitted evidence"). And we conclude that the judge did not abuse his discretion by allowing plaintiff to briefly reopen his case to read into evidence Patel's own deposition. Ibid. (noting that we review a judge's decision on a motion to reopen a case for abuse of discretion). Patel was not prejudiced, it took no time to do, and ultimately it helped Patel's theory of the case by attributing fault for the accident to the driver of the phantom vehicle. Because this evidence together with the legitimate inferences therefrom could sustain a judgment in plaintiff's favor, the judge properly denied Patel's motion for a directed verdict.

To summarize, plaintiff is entitled to full recovery from Patel for his injuries. The jury awarded plaintiff $200,000. The UM carrier has agreed to pay plaintiff's UM liability limit of $15,000 and must do so. Patel receives an offset for the UM payment and is then responsible for paying plaintiff

24

$185,000, the balance of the award. On remand, the judge should impose costs and prejudgment interest after the parties fully brief all related issues.

To the extent we have not addressed the parties' remaining arguments, we conclude that they are without merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

On the appeal, we reverse, remand, and direct the judge to enter judgment in accordance with this opinion. On the cross-appeal, we affirm. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION